Argued and submitted August 19, 1987, affirmed June 8, reconsideration denied August 12, petition for review denied September 29, 1988 (306 Or 661)

# STATE OF OREGON,
## *Respondent,*

*v.*

# RIDGE WAYNE FLEMING,
## *Appellant.*

## (C-85-11-34879; CA A41165 (Control), A41198)
## (Cases consolidated)

755 P2d 725

Timothy P. Alexander, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for aggravated murder, robbery in the first degree and burglary in the first degree, all arising out of the same incident. He contends that the court erred by denying his motion to suppress evidence obtained by execution of two separate search warrants and by admitting a tape-recorded telephone conversation. We affirm.

The body of the victim was discovered in his apartment; he had been killed by a single shot from a .25 caliber pistol. In the course of the ensuing investigation, the police discovered that Robert Thierman knew the victim and had visited him the night before his body was found. Thierman became the prime suspect. The police interviewed him and obtained a search warrant for his residence, which was a rented house in Portland. Defendant, who was an escapee from the Oregon State Penitentiary, was also a resident of the house, which was unknown to the police when they obtained the warrant, and he was not a suspect in the crimes.

During the execution of the warrant, the officers searched defendant's bedroom and seized a pair of defendant's pants which had a gun holster attached. They found several spent .25 caliber cartridges in the dresser in the room. After the search and further conversations with Thierman, defendant became a suspect and a focus of the investigation.

Thierman cooperated somewhat with the police. He agreed to take a polygraph examination and, in fact, took two separate tests. In each test he was asked, *inter alia,* three specific questions regarding his knowledge of the murder. The polygraph examiner concluded that he was deceptive in answering the questions both times. The police induced Thierman to place a telephone call to defendant from the Portland police station to defendant's brother's residence in Federal Way, Washington. The ensuing communication between defendant and Thierman was recorded with Thierman's consent but without defendant's knowledge. Defendant made incriminating statements during the conversation. The Portland police then obtained a search warrant from a Washington magistrate using information obtained from Thierman, from execution of the earlier Oregon search warrant and from the tape-recorded telephone conversation. Washington

law enforcement agents searched defendant's brother's residence pursuant to the warrant and seized evidence that connected defendant with the homicide.

■    Defendant's first claim of error relates to the search warrant for Thierman's residence. He contends that he occupied and controlled a separate room in the house and shared some common areas with other residents, including Thierman. He argues that, because the warrant did not designate sub-units or separate living spaces within the structure, the police had no authority to go into and search his room. Defendant concedes that the house appears to be a single family structure and that there was no reason for the officers to believe otherwise. He argues, however, that, once they were in the house searching, they were obligated to restrict their search to the "sub-units" that were most likely to be connected to the crimes being investigated.

The principal difficulty with defendant's argument is that there was scant evidence that the house was divided into "sub-units." The residence was a two-story structure with a kitchen and living room on the first floor. A stairway led to the second floor, where there were bedrooms and a sleeping loft. The doors had no numbers or other indications that they were separate units. When the police arrived to execute the warrant, the bedroom doors were all open and there were no structural indications of separate living space other than there simply being bedrooms. Thierman accompanied the officers and told them that he had some of his clothing stored in the closet in defendant's bedroom. Under all the circumstances, we conclude that the warrant covered the entire dwelling and that the officers were not required to limit their search to Thierman's bedroom. *See State v. Coatney,* 44 Or App 13, 604 P2d 1269, *rev den* 289 Or 107 (1980); *State v. Willcutt,* 19 Or App 93, 526 P2d 607, *rev den* (1974).

■ ■    Defendant next assigns error to admission of evidence obtained by the search of his brother's residence in Washington. He advances two theories: (1) that the magistrate who issued the search warrant was not informed by the affiant that Thierman, who was named as a source of information in the affidavit, had twice failed polygraph tests regarding the homicide; and (2) that part of the information in the

affidavit was obtained by recording defendant's telephone conversation with Thierman in violation of Washington law.

The affidavit recited information which Thierman had given the police about defendant's involvement in the murder. Defendant argues that, had the Washington magistrate known that Thierman had failed two polygraph tests, he could have discredited Thierman's statements and denied the warrant. Because the warrant was issued in Washington by a Washington magistrate, we analyze this assignment under Washington law. *State v. Rector/Tremaine,* 82 Or App 466, 729 P2d 1 (1986), *rev den* 302 Or 614 (1987).

Washington follows the Fourth Amendment test of *Franks v. Delaware,* 438 US 154, 98 S Ct 2674, 57 L Ed 2d 667 (1978), for determining if a misrepresentation of fact in an affidavit affects the warrant and the search. The Court held in *Franks* that a material misrepresentation of fact will be stricken if it was intentionally or recklessly made; if the affidavit is then insufficient, the warrant is void. That test has specifically been extended by the Washington Supreme Court to omissions of fact. In *State v. Cord,* 103 Wash 2d 361, 693 P2d 81 (1985), the court summarized the principle:

> "If the warrant is facially valid and the omission neither intentional nor made with reckless disregard for the truth, such a warrant may be upheld." 103 Wash 2d at 362.

The trial court in this case found that there was no misconduct on the part of the officers in not disclosing the polygraph tests and their results. Consequently, there is no basis for invalidating the warrant under the analysis in *Franks* and *Cord.*

Even if the polygraph results would have detracted from Thierman's believability, there are sufficient facts in the affidavit to support the magistrate's decision to credit the information attributed to Thierman. He told the police in some detail about the homicide and about defendant's participation in the shooting and attendant robbery. That information was corroborated by physical facts obtained from the search of Theirman's residence.

■ The second challenge to the Washington search warrant is based on the tape-recorded telephone conversation. The call was made from Portland to Federal Way and was

recorded without the knowledge of defendant but with the knowledge and consent of Thierman. In Oregon, only one participant need give consent for recording a telephone call. ORS 165.540. However, in Washington, all parties must give consent. RCW 9.73.030. Without consent, recording a telephone call in Washington is unlawful and cannot support a search warrant. *See State v. Williams,* 94 Wash 2d 531, 617 P2d 1012 (1980). Defendant argues that, because the warrant was issued in Washington, the place of the search, the law of that jurisdiction should apply. Defendant's approach is akin to a conflict of laws analysis based on the significance of the contacts with the states involved. It is true that Washington had a number of significant contacts with the search. There is, however, no need to use a choice of laws analysis. The recording was made in Oregon lawfully, and Washington law simply does not apply. *State v. Mayes,* 20 Wash App 184, 579 P2d 999 (1978). Consequently, the recording was lawfully included in the search warrant affidavit.

Defendant's final assignment is that the court erred in admitting the recording as evidence in the state's case. He makes the same argument urged in his motion to suppress. For the reasons set forth above, we conclude the court did not err.

Affirmed.