[No. 58445-1.    En Banc.    May 21, 1992.]

ALICE KADORANIAN, *Appellant,* v. BELLINGHAM POLICE
DEPARTMENT, ET AL, *Respondents.*

*William Johnston,* for appellant.

*Bruce Disend, City Attorney,* and *Joan Hoisington, Assistant,* for respondents.

*Tom P. Conom, Mark W. Muenster,* and *Steven W. Thayer* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for appellant.

ANDERSEN, J. —

## FACTS OF CASE

This is a civil action seeking damages allegedly caused by constitutional and statutory violations of the right to privacy. Appellant, Alice Kadoranian, claims her right to privacy was violated when Bellingham police officers inadvertently intercepted and recorded her brief response to a police informant's telephone inquiry asking whether her father was at home.

Ms. Kadoranian is a 15-year-old Canadian citizen and resident. The telephone interception and recording which she claims violated her right to privacy was inadvertent. It

occurred in May 1990. This was after her father, Kevorok (George) Kadoranian, became the focus of an investigation by the Northwest Regional Task Force (hereinafter Task Force). At all times herein, the Task Force was a law enforcement agency, including Bellingham police officers, which was investigating drug offenses in Whatcom County.

On May 23, 1990, law enforcement officers intercepted a package at the Federal Express office in Bellingham, Washington. The package was addressed to "Sal Carino" and was ultimately determined to contain 1 kilogram of cocaine. Task Force officers arrested Sal Carino when he picked up the package.

In exchange for a promise of leniency, Carino agreed to the interception and recording of a telephone call from him to George Kadoranian, his "boss" and the alleged owner of the cocaine. Carino was to telephone Kadoranian at his home or place of business in British Columbia, Canada.

Investigating officers requested an authorization to intercept and record the telephone call, pursuant to this state's privacy act, specifically RCW 9.73.230. The Bellingham police officer responsible for making such authorizations that evening considered the 8-page handwritten statement of Carino, discussed the case with the investigating officers and, after consulting with the Bellingham chief of police and Whatcom County prosecuting attorney's staff, issued an authorization for the interception. The authorization names "George Kadoranian" as the person believed to be involved in the crime of unlawful manufacture, delivery, sale, or possession of controlled substances.

When electronically intercepting telephone calls, the Bellingham Police Department's practice is to begin the tape recording before the number is dialed. The stated reason for this is to record the call without the knowledge of the non-consenting party and to comply with a statutory mandate that the recording be free of editing and alteration.[1]

In the instance involved here, police began recording just before the number was dialed. George Kadoranian's home

---

[1] RCW 9.73.230(4).

telephone number was dialed and after two rings his daughter, Alice Kadoranian, answered the telephone. There is no indication that she knew to whom she was talking. The entire conversation, which is the basis of her damage suit, is as follows:[2]

MS. KADORANIAN: Hello?
[CARINO]: Hi, is your dad there?
MS. KADORANIAN: No he's not, can I take a message?
[CARINO]: Uh, it's, uh, tell him I had problems with the car and I'll phone him back later.
MS. KADORANIAN: You have . . .
[CARINO]: Problems with the car, and I'll phone back later.
MS. KADORANIAN: All right.
[CARINO]: OK.
MS. KADORANIAN: OK. Bye.
[CARINO]: Bye.

George Kadoranian was eventually contacted and ultimately convicted of a drug charge in the Superior Court of the State of Washington for Whatcom County. While her father's criminal action was pending, Ms. Kadoranian filed this class action[3] against the Bellingham Police Department, the Northwest Regional Task Force and the State of Washington,[4] asking for statutory exemplary damages[5] of $25,000 for herself and for each of the members of the class. The class Ms. Kadoranian purported to represent includes all persons whose telephonic communications are inadvertently intercepted by police officers acting under authorizations issued pursuant to RCW 9.73.230, a part of the privacy act. The proposed class would include those responding whenever a wrong number is reached, long distance tele-

---

[2]Clerk's Papers, at 75.

[3]The motion to certify the class was denied by the Superior Court.

[4]Although the State of Washington also appeared in this action, only the Bellingham Police Department actively participated in the defense.

[5]See RCW 9.73.230(11).

phone operators placing operator-assisted calls, and receptionists answering telephone calls to their employers' businesses.

The initial complaint apparently alleged only a violation of the statute. Then, when her father was unsuccessful in challenging the constitutionality of the privacy act in his criminal case, Ms. Kadoranian amended her complaint to allege that the privacy act violated article 1, section 7 of our state constitution. Ms. Kadoranian does not ask for declaratory relief. Instead, she seeks monetary damages.

Both Ms. Kadoranian and the Bellingham Police Department moved for summary judgment in the superior court. The police department's motion was granted and Ms. Kadoranian's action was dismissed.

On appeal, Ms. Kadoranian's case was certified to this court by the Court of Appeals and this court accepted certification.[6] We affirm the trial court.

Two issues are determinative.

## ISSUES

ISSUE ONE. Does public policy or the language of this state's privacy act, RCW 9.73, limit electronic interception of telephone calls by law enforcement officers to points within the state of Washington?

ISSUE TWO. Is a person whose inconsequential communication is inadvertently intercepted and recorded pursuant to a valid authorization entitled to damages under the exemplary damages provision of the privacy act?

## DECISION

ISSUE ONE.

CONCLUSION. The privacy act does not limit the territory in which telephone calls may be intercepted, as long as the interception occurs in Washington. Because the interception

---

[6]This case was accepted as a companion case to *State v. Salinas*, 119 Wn.2d 192, 829 P.2d 1068 (1992).

184

in this case occurred in this state, Washington law determines the lawfulness of the interception.

Our state's privacy act (the Act), RCW 9.73, generally prohibits interception, transmission or recording of any "private communication" or "private conversation" without the consent of *all* parties involved in the communication.[7]

There are a number of statutory exceptions to this general prohibition.[8]

It is only the "one-party consent/no warrant" exception, however, that is at issue in this case. This particular exception was created by 1989 amendments to the Act. The amendments, which are part of the Omnibus Alcohol and Controlled Substances Act of 1989,[9] create a special procedure for the interception of conversations when the interception is part of a bona fide criminal investigation involving the manufacture, delivery or sale of illegal drugs. Such interceptions may be accomplished without prior judicial approval, if they are based on the consent of one of the parties to the conversation *and* if designated procedures are followed.[10]

These statutory procedures permit law enforcement officers to initially determine probable cause and then to authorize interception and recording of telephone calls.

The statute provides that authorizations issued pursuant to the Act are "valid in all jurisdictions within Washington state".[11] Ms. Kadoranian argues that this phrase means police may not lawfully intercept telephone conversations unless they are initiated *and* received within the territorial boundaries of the state of Washington. That is incorrect.

---

[7]RCW 9.73.030(1)(a), (b).

[8]*See, e.g.*, RCW 9.73.030(2) (permitting the interception and recording of calls involving emergencies, extortion, threats, harassment or hostage taking); and RCW 9.73.040(1) (permitting the interception and recording of certain calls involving a threat to national security or human life, or arson).

[9]Laws of 1989, ch. 271, §§ 201-210, p. 1289.

[10]RCW 9.73.230.

[11]RCW 9.73.230(3).

■ ■ The goal of statutory construction is, of course, to give effect to the intent of the Legislature.[12] Where the meaning of the statute is clear from the language of the statute alone, there is no room for judicial interpretation.[13] If the language of the statute is amenable to more than one construction, however, resort to legislative history and other aids to construction is appropriate.[14] Since it is possible that this statutory section could be construed in more than one way, we look to the purpose and history of the statute for guidance in interpreting the language used.

The intent and purpose of the 1989 amendments to the privacy act are to permit the interception of conversations involving illegal drug transactions

> in certain circumstances without prior judicial approval in order to protect the life and safety of law enforcement personnel and to enhance prosecution of drug offenses, . . .

RCW 9.73.200 (part).

The Final Legislative Report explains that the amendment to the Act is intended "to give law enforcement agencies *greater* authority to intercept, transmit or record conversations that involve illegal drug activities." (Italics ours.)[15]

■ In light of the express legislative intent and history of the 1989 amendment to the Act, we interpret the language that an authorization "is valid in all jurisdictions within Washington state" to mean that the *authorization* may be used to justify an interception and to serve as a basis for admission of lawfully obtained evidence in any court in this state. This language does not limit the territory within which the call may be made, but rather clarifies the authority of law enforcement officers to act outside their own particular jurisdictions in certain drug investigations.

---

[12]*Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d 655, 669, 818 P.2d 1076 (1991).

[13]*Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

[14]*Yakima v. International Ass'n of Fire Fighters, Local 469*, 117 Wn.2d at 669; *Cherry*, 116 Wn.2d at 799.

[15]Final Legislative Report, 51st Legislature (1989), at 119.

In the case before us, the police issued and applied the authorization within their own jurisdiction, the city of Bellingham. Accordingly, this section of the statute is not implicated.

Ms. Kadoranian also urges us to hold that the interception of the telephone call made to Canada was unlawful because it violated Canadian law. Generally, courts determining the validity of a telephone interception have looked to the law of the jurisdiction in which the interception — or the recording — occurred in order to determine the lawfulness of the interception.[16]

█ Interceptions and recordings occur where made. Whether the interception of Ms. Kadoranian's conversation was lawful is thus determined according to the laws of the State of Washington, the place where the conversation was intercepted and recorded, not according to the laws of Canada.

Nevertheless, Ms. Kadoranian argues that as a matter of public policy we should find that Washington law enforcement officers may not violate Canadian law.

█ This is a civil action. Ms. Kadoranian neither pleaded nor proved Canadian law in the trial court as required by our Superior Court Civil Rules.[17] No mention is made of Canadian law in the trial court record. It thus appears that the issue was never before the trial court. Accordingly, we need not consider the effect of Canadian law on this case.[18]

---

[16]*See, e.g., State v. Fleming*, 91 Or. App. 394, 399, 755 P.2d 725, 727 (Oregon 1-party consent statute governed recording of a call to defendant in Washington from informant in Oregon), *review denied*, 306 Or. 661 (1988); *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978) (interception and recording of a telephone conversation from Canada to New York governed by the law of Canada, the place where the interception occurred), *cert. denied*, 442 U.S. 931 (1979); *United States v. Tirinkian*, 502 F. Supp. 620, 627 (D.N.D. 1980) (the law that controls the legality of an interception is the law of the place where the interception takes place).

[17]CR 9(k)(2) (pleading the law of other jurisdictions) and CR 44.1 (pleading and proving foreign law). *See also International Tracers of Am. v. Estate of Hard*, 89 Wn.2d 140, 144, 570 P.2d 131 (1977), *appeal dismissed*, 435 U.S. 1004 (1978); *Byrne v. Cooper*, 11 Wn. App. 549, 550-51, 523 P.2d 1216, *review denied*, 84 Wn.2d 1013 (1974).

[18]*Margoles v. Hubbart*, 111 Wn.2d 195, 199, 760 P.2d 324 (1988); *Concerned Coupeville Citizens v. Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243, *review denied*, 118 Wn.2d 1004 (1991).

Furthermore, Ms. Kadoranian's argument on appeal with respect to Canadian law is inadequate. Because the issue was not before the trial court, and because it has not been adequately briefed and argued in this court, we decline to interpret the effect of Canadian law on this case.[19]

We hold that the interception, in Washington, of a telephone call made to a point outside the state does not violate RCW 9.73.230(3) of the privacy act. We also hold that the lawfulness of such an interception is to be determined according to the laws of Washington.

ISSUE TWO.

CONCLUSION. The exemplary damages provision of the privacy act, RCW 9.73.230(11), is not available to persons whose inconsequential conversations are inadvertently intercepted by police officers acting pursuant to a valid authorization. Furthermore, the very abbreviated communication between Ms. Kadoranian and Mr. Carino — a stranger to her at the time of the communication — was not a "private" one which is entitled to the protection of our state's privacy act.

Ms. Kadoranian argues that because there was no authorization, based on probable cause, to intercept *her* telephone conversation, the interception was unlawful and as a consequence she is entitled to $25,000 in exemplary damages.

The remedy for an unlawful electronic interception by police is generally suppression of evidence in the criminal action. However, our privacy act also provides for damages in a civil action.[20] RCW 9.73.230(11) provides:

> An authorizing agency is liable for twenty-five thousand dollars in *exemplary* damages, in addition to any other damages authorized by this chapter or by other law, to a person whose conversation or communication was intercepted, transmitted, or recorded pursuant to an authorization under this section *if*:
> (a) In a review under subsection (7) of this section, or in a suppression of evidence proceeding, it has been determined

---

[19]*See State v. Mayes*, 20 Wn. App. 184, 194, 579 P.2d 999 (court refused to interpret California interception law because it was not adequately briefed), *review denied*, 91 Wn.2d 1001 (1978).

[20]*See* RCW 9.73.060, .230(11).

that the authorization was made without the probable cause required by subsection (1)(b) of this section; *and*

(b) The authorization was also made without a reasonable suspicion that the conversation or communication would involve the unlawful acts identified in subsection (1)(b) of this section.

(Italics ours.)

Ms. Kadoranian claims she and members of the class she claims to represent are entitled to damages under this section. The statute does not, however, apply to Ms. Kadoranian's claim because she does not establish the elements required by the statute, that is, she does not show that the reviewing court determined that the authorization was made without probable cause and without reasonable suspicion. Indeed, the authorization was apparently valid; it just did not name Ms. Kadoranian.

■ We do not read this statute as providing an avenue for exemplary, or punitive damages, in circumstances where police, acting pursuant to a valid authorization, inadvertently hear an inconsequential and nonincriminating statement by someone not named in the authorization.

Again, a statute is to be interpreted so as to give meaning to the legislative intent and purpose.[21] The Legislature was obviously cautious about its decision to allow law enforcement officers, rather than a judge, to make the initial determination as to the existence of probable cause.[22] In enacting the exemplary damages provision, the Legislature intended to provide law enforcement officers with an additional incentive to avoid unreasonable and intrusive investigations absent probable cause. Exemplary damages are punitive in nature.[23] We will not presume that the Legislature intended to punish law enforcement officers who are acting properly and pur-

---

[21]*State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 500, 816 P.2d 725 (1991).

[22]*See* RCW 9.73.200, .230.

[23]*Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 698-99, 635 P.2d 441, 649 P.2d 827 (1981).

suant to a valid authorization when they inadvertently overhear an insignificant conversation. Nothing suggests that the Legislature intended to require law enforcement agencies to pay $25,000 to each long distance operator, receptionist or other person who is inadvertently recorded.

Ms. Kadoranian argues that inadvertent recording of conversations would not occur if police waited until the target of the authorization was on the line.

██ The record in this case indicates, however, that the nonconsenting party to the conversation would be able to detect the beginning of a tape recording if the recording device were turned on after the conversation had commenced. The record before us indicates that in order to be made without the knowledge of the nonconsenting party, the recording had to begin before the conversation began. Furthermore, the recording of any such conversation must be done "in such a manner that protects the recording from editing or other alterations."[24] To hold that a tape recorder cannot be turned on until after the target of the investigation comes on the line would make the 1-party consent statute unworkable. Statutes "should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided."[25] To interpret the statute as urged by Ms. Kadoranian would make the use of electronic interception in drug investigations virtually impossible. We decline to so construe it.

██ Additionally, the conversation involved here is not of the nature intended to be protected by the privacy act. The Act protects only "private" communication and conversations.[26] The statute does not define private conversation. Cases interpreting this phrase hold that the term "private

---

[24]RCW 9.73.230(4) (part).

[25]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[26]RCW 9.73.030(1).

conversation" is to be given its ordinary and usual meaning.[27] Quoting from *Webster's Third New International Dictionary* (1969), the court in *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979), interpreted the word "private" as:

> "belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public."

*Forrester* then goes on to hold as follows:

> To determine whether or not a telephone conversation is private, the court must consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case.

*Forrester*, 21 Wn. App. at 861.

Whether a particular communication or conversation is "private" and thus protected from intrusion by the privacy act is a question of fact.[28] The pertinent facts involved in the case before us are undisputed. Because reasonable minds could not differ on the subject, the issue of whether the communication between Ms. Kadoranian and Sal Carino was "private" may thus be determined as a matter of law.[29]

When Ms. Kadoranian answered the home telephone, there is no indication she knew who the caller was. She gave general information, without requiring identification from the caller, and without asking the caller's reason for wanting to talk to her father. There is no reason to believe that Ms. Kadoranian would have withheld this information from any caller. It does not appear that Ms. Kadoranian intended to keep the information (the fact that her father was not home) "secret" or that she had any expectation that her conversation was private.

---

[27]*State v. Slemmer*, 48 Wn. App. 48, 52, 738 P.2d 281 (1987); *State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), *review denied*, 92 Wn.2d 1006 (1979).

[28]*Forrester*, 21 Wn. App. at 861; *Slemmer*, 48 Wn. App. at 52.

[29]*See, e.g., Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989).

██ We thus conclude that the very brief communication between Mr. Carino and Ms. Kadoranian was not a "private" communication or conversation. Like the long distance operator's comments, the comments of Ms. Kadoranian were inconsequential, nonincriminating and made to a stranger. They were not the kind of communication that the privacy act protects.

Ms. Kadoranian also contends that the state constitutional right to privacy was violated. However, she alleges no injury.

██ A litigant does not have standing to challenge a statute on constitutional grounds unless the litigant is harmed by the particular feature of the statute which is claimed to be unconstitutional.[30] Further, the harm must be more than a general dissatisfaction with the statute,[31] it must be "actual damage or injury".[32]

Because no actual injury has been claimed, nor can we perceive any under the facts alleged, Ms. Kadoranian has no standing to challenge the constitutionality of the statute,[33] and we thus do not address her constitutional claims.

██ Although Ms. Kadoranian also assigned error to the trial court's denial of her motion to certify the class, that assignment was neither argued nor briefed. We thus deem it waived. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

To recapitulate, we hold as follows: the 1989 amendment to this state's privacy act does not prohibit interception of telephone calls to points outside the state; the exemplary damages provision contained in the Act does not apply to

---

[30]*In re Powell*, 117 Wn.2d 175, 197, 814 P.2d 635 (1991); *State v. Lundquist*, 60 Wn.2d 397, 401, 374 P.2d 246 (1962).

[31]*State v. Human Relations Research Found.*, 64 Wn.2d 262, 269, 391 P.2d 513 (1964).

[32]*Camer v. Seattle Sch. Dist. 1*, 52 Wn. App. 531, 538, 762 P.2d 356 (1988), *review denied*, 112 Wn.2d 1006, *cert. denied*, 493 U.S. 873 (1989).

[33]*Powell*, 117 Wn.2d at 197.

inadvertent interceptions of inconsequential, nonincriminating conversations and communications so long as the interceptions are accomplished pursuant to valid authorizations; and the communication by Ms. Kadoranian to a stranger inquiring whether her father was at home was not a "private" communication.

The summary judgment of dismissal is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.