76 Wn. App. 135 (1994)
882 P.2d 1199
THE STATE OF WASHINGTON, Respondent,
v.
D.J.W., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
A.G.E., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
C.R.G., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
KEITH DELOYNE PIGGEE, Appellant. THE STATE OF WASHINGTON, Respondent,
v.
KEVIN GILES, Appellant. THE STATE OF WASHINGTON, Respondent,
v.
T.L.C., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
DARRELL BECK, Appellant. THE STATE OF WASHINGTON, Respondent,
v.
DARRYL WAYNE HARRIS, Appellant. THE STATE OF WASHINGTON, Respondent,
v.
D.A.J., Appellant. THE STATE OF WASHINGTON, Respondent,
v.
L.L.F., Appellant.
Nos. 31088-7-I; 31212-0-I; 31232-4-I; 31364-9-I; 31421-1-I; 31564-1-I; 31679-6-I; 31716-4-I; 32151-0-I; 32193-5-I.
The Court of Appeals of Washington, Division One.
November 7, 1994.
*138 Neal J. Philip of Washington Appellate Defender Association, for appellants.
Norm Maleng, Prosecuting Attorney, and James Whisman and Rian Kazuo Ebesugawa, Deputies, for respondent.
GROSSE, J.
The Appellants appeal their convictions of delivery of cocaine and claim the trial court erred by denying their motions to suppress the evidence obtained from the interception and recording of conversations between them and an undercover cooperating witness. The Appellants claim the recordings violated Washington's privacy act, RCW 9.73 (hereinafter Privacy Act), and their rights under Const. art. 1, § 7. We affirm the convictions, holding that the conversations were not private and were therefore outside the purview of the Privacy Act, such that recording them could not have violated the act. Further, assuming the conversations were private, reversal is not required because the application and authorization to record complied with the requirements of the Privacy Act. We also hold that the recordings did not deprive the Appellants of their rights under Const. art. 1, § 7 because there is no constitutional expectation of privacy in a conversation where, as here, one party consents to the recording of the conversation.

FACTS
Each of the Appellants was arrested during Operation Hardfall, an undercover narcotics investigation conducted jointly by the Federal Bureau of Investigation (FBI) and the Seattle Police Department (SPD). A key player in the investigation was Kevin Glass, a cooperating witness who was also central to the success of a similar investigation in San Diego.
*139 At the beginning of Operation Hardfall, SPD Commander William D. Bryant submitted an application to the court seeking authorization pursuant to RCW 9.73.090 to record conversations between Glass, who consented to the recording, and unidentified nonconsenting parties. The application stated that Glass, a former gang member familiar with street drug buys, would drive through specific areas of King County in an automobile outfitted with audio and visual recording equipment. The equipment would be positioned to record conversations between Glass and persons who either stood within 10 feet of the front driver and passenger windows of the automobile or sat in the front seat. The areas into which Glass was to drive are recognized high narcotics trafficking areas known as stay out of drug areas or "SODA's". The Superior Court issued an order authorizing the recordings. The order authorized the FBI and SPD to intercept and record "the communications or conversations of street traffickers dealing drugs in high narcotics trafficking areas of Seattle and unincorporated King County", concerning the commission of drug offenses as follows:
in a 1976 Cadillac Seville, WA license plate IXX 155, and a 1985 Oldsmobile Cutlass, WA license plate 535 BRZ (maps attached hereto) or within 10 feet of the driver's or front passenger's door, when the vehicle is located in any of the high narcotics trafficking areas described in the application or within 1,000 feet of their boundaries, or any place where the vehicle is driven at the direction of the non-consenting party to the communication or conversation.
The equipment in Glass's automobile recorded each Appellant engaging in drug transactions with Glass during Operation Hardfall. Each Appellant was arrested and charged with delivery of cocaine. They all sought to suppress the evidence obtained through the recordings, and in each case the court denied the motion. Each Appellant was found guilty of the charged crime and sentenced accordingly. They appeal and claim the trial court erred by denying their motions to suppress because the recording of their conversations with Glass violated the Privacy Act and deprived them of their rights under Const. art. 1, § 7.

*140 DISCUSSION

A

Privacy Act
Subject to exceptions, the Privacy Act makes it unlawful for private and state governmental entities to intercept or record any "[p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b).
The threshold question presented is whether the Privacy Act is even implicated in the instant case. The act only regulates the recording of private conversations. If the conversations between the Appellants and Glass were not private, then the recording fell outside the purview of the statute and compliance with its dictates was not required.
[1, 2] Determining whether a particular conversation is private is a question of fact. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992); State v. Flora, 68 Wn. App. 802, 806, 845 P.2d 1355 (1992). However, where the pertinent facts are undisputed and reasonable minds could not differ on the subject, the issue of whether a particular conversation is private may be determined as a matter of law. Kadoranian, 119 Wn.2d at 190; State v. Flora, 68 Wn. App. at 806. We find that in the instant case, reasonable minds could not differ and, as a matter of law, the conversations at issue were not private.
[3] The Privacy Act does not define "private conversation". However, in Kadoranian, the court set forth the analysis for determining whether a conversation should be deemed private:
Cases interpreting this phrase hold that the term "private conversation" is to be given its ordinary and usual meaning. Quoting from Webster's Third New International Dictionary (1969), the court in State v. Forrester, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), review denied, 92 Wn.2d 1006 (1979), interpreted the word "private" as:
"belonging to one's self ... secret ... intended only for the persons involved (a conversation) ... holding a confidential *141 relationship to something ... a secret message: a private communication ... secretly: not open or in public."
Forrester then goes on to hold as follows:
To determine whether or not a telephone conversation is private, the court must consider the intent or reasonable expectations of the participants as manifested by the facts and circumstances of each case.
Forrester, 21 Wn. App. at 861.
(Footnote omitted.) Kadoranian, 119 Wn.2d at 189-90.
[4] Under the foregoing analysis, the conversations between the Appellants and the cooperating witness were not private. The Appellants were vendors of merchandise selling their wares on a public street to anyone who wished to be a customer. Just as a clerk in a store would be willing to engage in a conversation about a product with any customer who happened by, so did the Appellants manifest a willingness to engage in a conversation with any prospective buyer. It is reasonable to conclude that their conversations with Glass were practically identical in substance to those between them and any other purchaser with whom they transacted business. The conversations, then, could not have been "secret" or intended only for the ears of the individual Appellants and Glass, because the identity of the person with whom the Appellants were conversing during any given conversation was not significant.[1]
We find the situation here similar to that in Kadoranian, where the police intercepted a brief telephone conversation between the plaintiff and a police informant who called to speak with the plaintiffs father, a police suspect. The conversation consisted of the daughter telling the informant her father was not home. In rejecting the daughter's argument that the interception of the conversation violated the Privacy Act, the court stated:
When Ms. Kadoranian answered the home telephone, there is no indication she knew who the caller was. She gave general information, without requiring identification from the caller, *142 and without asking the caller's reason for wanting to talk to her father. There is no reason to believe that Ms. Kadoranian would have withheld this information from any caller. It does not appear that Ms. Kadoranian intended to keep the information (the fact that her father was not home) "secret" or that she had any expectation that her conversation was private.
Kadoranian, 119 Wn.2d at 190.
In the instant case, there is no reason to believe the Appellants would have withheld any information they gave Glass, including the fact that they had cocaine to sell, from any other prospective buyer. There is no indication that any of the Appellants intended to keep this information from anyone other than, of course, the police. A desire to conceal one's conversation from the police is not enough to make that conversation private. We find no indication that the Appellants had any expectation of privacy in their conversations with Glass.[2]
In sum, giving the term "private conversation" its ordinary and usual meaning, we conclude that the conversations between the Appellants and Glass were not private. Consequently, recording the conversations did not violate the Privacy Act because the act applies only to private conversations.
However, assuming the conversations were private, reversal is still not required because the recordings complied with the requirements of the Privacy Act. The pertinent exceptions to the Privacy Act's general prohibition of recording private conversations are contained in RCW 9.73.090(2) and (5). RCW 9.73.090(2) provides in part:
It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: PROVIDED, That prior to the interception, transmission, *143 or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony[.]
RCW 9.73.090(5) provides:
If the judge or magistrate determines that there is probable cause to believe that the communication or conversation concerns the unlawful manufacture, delivery, sale, or possession with intent to manufacture, deliver, or sell, controlled substances as defined in chapter 69.50 RCW, or legend drugs as defined in chapter 69.41 RCW, or imitation controlled substances as defined in chapter 69.52 RCW, the judge or magistrate may authorize the interception, transmission, recording, or disclosure of communications or conversations under subsection (2) of this section even though the true name of the nonconsenting party, or the particular time and place for the interception, transmission, recording, or disclosure, is not known at the time of the request, if the authorization describes the nonconsenting party and subject matter of the communication or conversation with reasonable certainty under the circumstances. Any such communication or conversation may be intercepted, transmitted, recorded, or disclosed as authorized notwithstanding a change in the time or location of the communication or conversation after the authorization has been obtained or the presence of or participation in the communication or conversation by any additional party not named in the authorization.
Authorizations issued under this subsection shall be effective for not more than fourteen days, after which period the issuing authority may renew or continue the authorization for an additional period not to exceed fourteen days.
RCW 9.73.090(5) was enacted as part of the Omnibus Alcohol and Controlled Substances Act of 1989. That act was designed to increase the effectiveness of the prosecution of drug offenses, see RCW 9.73.200, and "`to give law enforcement agencies greater authority to intercept, transmit or record conversations that involve illegal drug activities.'" Kadoranian, 119 Wn.2d at 185 (quoting Final Legislative Report, 51st Legislature (1989), at 119).
The Appellants contend the authorization to record was invalid because the application for authorization did not *144 establish the existence of probable cause to believe the nonconsenting parties committed, were engaged in, or were about to commit a felony, as required by RCW 9.73.090(2). The Appellants also contend the application did not establish probable cause because it did not describe with particularity the persons whose conversations would be recorded.
[5] The probable cause standard by which the Appellants would have us analyze applications for authorization to record under the Privacy Act is the constitutional standard under which the validity of search warrants is judged. It is evident from an examination of the Privacy Act that the Legislature intended for the analysis of the probable cause issue in a Privacy Act matter to be governed by the terms of the statute itself, not by constitutional probable cause principles. First, RCW 9.73.130(3)(a) requires that applications for authorization to record communications or conversations pursuant to RCW 9.73.090 contain a statement as to "[t]he identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded". (Italics ours.)
Also, subsection (5) of RCW 9.73.090 specifically addresses 1-party consent recordings in cases involving felony drug offenses in violation of RCW 69.50 and permits a judge to authorize a recording
even though the true name of the nonconsenting party, or the particular time and place for the interception, transmission, recording, or disclosure, is not known at the time of the request, if the authorization describes the nonconsenting party and subject matter of the communication or conversation with reasonable certainty under the circumstances.
These provisions permit the issuance of an authorization to record in drug cases in the absence of the degree of particularity constitutionally required for the issuance of a valid search warrant. To be valid, neither the application nor the authorization to record under RCW 9.73.090(5) must identify the nonconsenting parties with the degree of particularity required for search warrants. Rather, as the statute plainly provides, the nonconsenting party need only be *145 described with "reasonable certainty under the circumstances".
Further, applying the constitutional probable cause analysis to determinations of probable cause under the Privacy Act would not serve the purpose underlying the constitutional particularity requirement. That requirement is imposed to guarantee that the intrusion upon one's expectation of privacy in the premises searched, or upon one's own person, extends no further than necessary. State v. Wright, 61 Wn. App. 819, 825, 810 P.2d 935, review denied, 117 Wn.2d 1012 (1991). There is no expectation of privacy, however, where one party to a conversation consents to the contents being recorded, State v. Corliss, 123 Wn.2d 656, 663-64, 870 P.2d 317 (1994); State v. Salinas, 119 Wn.2d 192, 197, 829 P.2d 1068 (1992), and the justification for imposing the particularity requirement is not present under these circumstances.
We therefore find that the Legislature did not intend for probable cause determinations under the Privacy Act to be made using constitutional probable cause principles, including the particularity requirement. That is not to say, however, that a judge may authorize a "roving commission" to randomly record conversations with any nonconsenting party. The act contains sufficient safeguards to protect against such unfettered discretion in the hands of the recording party and against the issuance of authorizations to record in the absence of proper circumstances.
[6, 7] In the instant case, we find that the trial judge did not err in determining that probable cause existed to believe that the conversations to be recorded concerned the unlawful sale or possession with intent to sell controlled substances. "A judge issuing an intercept order has considerable discretion to determine whether the statutory safeguards have been satisfied." State v. Cisneros, 63 Wn. App. 724, 728-29, 821 P.2d 1262, review denied, 119 Wn.2d 1002 (1992). A reviewing court does not examine the application's sufficiency de novo, but rather is "`to decide if the facts set forth in the application were minimally adequate to support *146 the determination that was made'". State v. Knight, 54 Wn. App. 143, 150-51, 772 P.2d 1042 (quoting United States v. Scibelli, 549 F.2d 222, 226 (1st Cir.), cert. denied, 431 U.S. 960 (1977)), review denied, 113 Wn.2d 1014 (1989).
The facts set forth in the application were minimally adequate to support the authorizing court's determinations. The application discussed the fact that the undercover investigation was to take place in SODA's, recognized areas of high narcotics trafficking. In support of this, and in support of the use of Glass as a cooperating witness, the application described Glass's contribution to the success of a similar investigation in California and described two test runs conducted in King County during which Glass made two drug buys within 45 minutes in two of the SODA's identified in the application. These controlled buys were conducted in the same manner as the recorded buys would be conducted. Moreover, the allegation in the application that probable cause existed to believe that street traffickers would be committing felony drug offenses in the SODA's was made by a 16-year member of the SPD who had extensive experience in undercover drug investigations and who was then the commander of the SPD Narcotics Section.
We find that the facts in the application were at least minimally adequate to establish probable cause to believe not only that the communications would concern felony drug offenses (as required by RCW 9.73.090(5)), but also that the individuals who would be recorded would be committing felony drug offenses (as required by RCW 9.73.090(2)). Based on these facts, the trial judge did not err in finding
probable cause for belief that street traffickers dealing drugs in high narcotics trafficking areas of Seattle and unincorporated King County are about to commit the crimes of Violation of the Uniformed [sic] Controlled Substances Act, RCW 69.50, felonies;
... probable cause for belief that communications or conversations relating to said offenses will take place and will be obtained as evidence through interception and recording as hereafter set forth[.]
*147 We also find that the authorization described "the nonconsenting party and subject matter of the communication or conversation with reasonable certainty under the circumstances" as required by RCW 9.73.090(5). The authorization described the nonconsenting parties as "street traffickers dealing drugs in high narcotics trafficking areas of Seattle and unincorporated King County". Maps were attached to the authorization which identified these areas, the SODA's, in which the recording was authorized. The subject matter of the conversations to be recorded was described in the authorization as communications or conversations "concerning commission of the offenses of Violation of the Uniformed [sic] Controlled Substances Act, RCW 69.50".
Under the circumstances, the description of the nonconsenting parties and the subject matter of the conversations was sufficient to satisfy RCW 9.73.090(5). Operation Hardfall was to be a 3-month undercover investigation in high narcotics trafficking areas, potentially involving numerous arrestees all or most of whom would not be identified until after the offense was committed. Identifying the nonconsenting parties by name at the time the application was submitted would have been impossible. Requiring identification by name would effectively prevent undercover investigations such as Operation Hardfall from ever being conducted, in contravention of the purpose of the Omnibus Alcohol and Controlled Substances Act. We find that the descriptions in the application were as specific as possible under the circumstances and were sufficient.
The Appellants also contend the authorization to record was invalid because the application did not comply with the requirement in RCW 9.73.130(3)(b) that an application for authorization contain a statement of the "details as to the particular offense that has been, is being, or is about to be committed". Again, we disagree.
[8] Because RCW 9.73.090(5) permits the authorization of a recording in felony drug cases even if the particular time and place for the recording are not known at the time of the *148 application, the term "details" as used in RCW 9.73.130(3)(b) cannot be interpreted to mean that precise dates, times, and locations must be included in the application in such cases.
Here, the application specified that drug offenses in violation of RCW 69.50 would be occurring in specific areas of King County, namely those areas identified as SODA's, and that the offenses targeted by the investigation would be sales of narcotics within the SODA's to the cooperating witness who would remain at all times within his vehicle. The application stated that Operation Hardfall would be conducted for 60 days and that the application would be renewed as statutorily required. With respect to the offenses which were about to be committed and the manner in which they would be committed, the application was as specific as reasonably possible under the circumstances. We conclude that the application was sufficient under RCW 9.73.130(3)(b), read in conjunction with the provisions of RCW 9.73.090(5) specifically applicable to felony drug offenses.
The Appellants also contend the application was deficient because it did not comply with the requirement of RCW 9.73.130(3)(f) that it contain "[a] particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ[.]" We disagree.
The application provided:
Without the audio and video recordings to corroborate the witness' account of the transactions, his credibility would be subject to attack. The recordings will show if the defendants were entrapped into committing the offense. In addition it is a common practice of narcotics dealers to rob a buyer of his money. The recording and transmittal of these conversations will allow the police to go to the aid of the witness if his safety is in jeopardy. There is also the possibility that the witness could be arrested for engaging in narcotics transactions by police officers who are unaware of Operation Hardfall. If this should occur, the transmittal of conversations would allow the surveillance officers to be aware of this situation and prevent the witness from being booked into jail. Finally, the video recording of the drug dealers will enable the police to identify the subjects who have committed the offenses.
*149 The application also stated:
[T]he presence of an undercover officer in the vehicle while the transactions occur would appear suspicious to street dealers, and thus makes the dealers more cautious. This is because undercover officers look out of place with the cooperating witness.
[9] The order authorizing the recording found that "[n]ormal investigative techniques reasonably appear to be unlikely to succeed if tried".
The showing required of law enforcement officials under RCW 9.73.130(3)(f) is not one of absolute necessity. "[P]olice officials need not exhaust all alternatives, but must seriously consider other techniques, and the authorizing court must be informed of the reasons the alternatives have been or likely will be inadequate."
State v. Cisneros, 63 Wn. App. at 729 (quoting State v. Knight, 54 Wn. App. 143, 150, 772 P.2d 1042, review denied, 113 Wn.2d 1014 (1989)).
The application in the instant case sufficiently informed the authorizing court of the reasons for the probable inadequacy of other investigative techniques. Included among the reasons were that the use of recordings would avoid a "one-on-one swearing contest" as to who said what, rebut allegations of entrapment, and enhance the credibility of the undercover witness. These are valid reasons for using recorded conversations instead of other, more conventional, investigative techniques. State v. Lopez, 70 Wn.App. 259, 267, 856 P.2d 390 (1993), review denied, 123 Wn.2d 1002 (1994); State v. Cisneros, 63 Wn. App. at 729; State v. Platz, 33 Wn. App. 345, 350, 655 P.2d 710 (1982), review denied, 99 Wn.2d 1012 (1983). We find that the facts set forth in the application were at least minimally adequate to support the determination that other normal investigative procedures reasonably appeared unlikely to succeed. The trial court did not err by making that determination.
In conclusion, we hold that assuming the conversations between the Appellants and Glass were private, the trial court did not err by issuing the authorization to record, and *150 that both the authorization and the application for authorization complied with the requirements of the Privacy Act.

B

Constitutional Right to Privacy
[10] The Appellants contend that because the recordings were obtained in violation of the Privacy Act, they were deprived of their rights under Const. art. 1, § 7, which guarantees that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This issue is controlled by settled law:
The issue as to whether there is a right of privacy under our constitution where one party, as here, consents to the contents of the conversation being recorded was settled in three cases decided in the 1960's: See State v. Jennen, 58 Wn.2d 171, 361 P.2d 739 (1961); see also State v. Wright, 74 Wn.2d 355, 444 P.2d 676 (1968), cert. denied, 394 U.S. 961 (1969); State v. Goddard, 74 Wn.2d 848, 447 P.2d 180 (1968). This court held there was no expectation of privacy and Const. art. 1, § 7 did not prevent the disclosure of the conversation.
State v. Corliss, 123 Wn.2d at 663-64 (quoting State v. Salinas, 119 Wn.2d 192, 197, 829 P.2d 1068 (1992)).
The Appellants' convictions are affirmed.
BAKER, A.C.J., and AGID, J., concur.
Review granted at 126 Wn.2d 1008 (1995).
NOTES
[1] Obviously, Glass's identity as a cooperating witness eventually became quite significant to the Appellants, but in a different context than relevant here. While Glass's identity remained unknown to the Appellants, the Appellants treated him no differently than they would have treated any other potential buyer.
[2] The fact that some or all of the Appellants entered Glass's automobile does not make their conversations private. We find no evidence suggesting that those Appellants who entered the automobile did so out of a desire to keep the conversation private. Rather, they entered the automobile because doing so was necessary to complete the transaction with Glass, who remained inside the automobile at all times during the recorded transactions.