[No. 22807-6-II.   Division Two.   August 11, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER ERNEST MATTHEWS, *Appellant*.

*Walter E. Matthews*, pro se.

*Pattie Mhoon*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney, Kathleen Proctor, Deputy*, and *Ramsey Ramerman, Legal Intern*, for respondent.

ARMSTRONG, C.J. — The Tacoma Police Department set up a drug buy from Walter Matthews using confidential informants. From the Tacoma police station, one informant called Matthews's pager. Matthews called back from Sumner. The Tacoma police tape-recorded the call relying on a statute that authorizes the police to intercept and record communications involving drug sales.[1] After the sale, Matthews was stopped and arrested while driving a car registered to another. The police found cocaine under the front seat of the car and a gun in the trunk. Matthews was convicted of unlawful delivery of a controlled substance, unlawful possession of a controlled substance with intent to deliver, third degree assault, and first degree unlawful possession of a firearm. Matthews contends that the call was illegally recorded because it was made from a location outside of the jurisdiction of the Tacoma police. Because of this, he argues that the trial court erred in admitting a tape of the telephone conversation. He also

---

[1] RCW 9.73.230.

contends that the evidence is insufficient to establish constructive possession of the cocaine and gun found in the car. Pro se, Matthews argues that he was denied effective assistance of counsel. We affirm.

## FACTS

On June 19, 1996, Officer Heath Holden of the Tacoma Police Department set up a drug buy using two confidential informants, Lonnie and Debbie. The focus of the investigation was Walter Matthews, also known as "Moody." Lonnie agreed to let the Tacoma officers record his telephone conversation with Matthews, and the officers applied for and received authorization for a "204 audio intercept."[2] In the application for authorization, Officer Holden said that his informant had seen large quantities of rock cocaine at 8403 South Thompson Street and that "Moody" used the residence to distribute controlled substances.

Lonnie gave the officers Matthews's pager number. They paged him from the County-City building in Tacoma and received a call back. Apparently, Matthews placed the call from Sumner. Lonnie answered the call and told Matthews he wanted to purchase $200 worth of rock cocaine. Matthews agreed to the sale. Matthews instructed Lonnie to go to 8403 South Thompson and give the money to Randy Kletke. Kletke would take the money to Matthews, get the cocaine, and bring it back to Lonnie. The tape recording of this conversation was admitted at trial.

After Lonnie was fitted with a wire, he and Debbie went to the house on Thompson Street and gave the money to Kletke. While the informants waited at the house, Kletke drove to the Bavarian Motel in Sumner. He went to room 22 and gave Matthews the money. Matthews gave him a bag containing cocaine.

Kletke left the motel, and Matthews then drove off in a blue Cadillac. Matthews was followed to a store. Shortly after he left the store, Officer Jepson of the Tacoma police

---

[2] *See* RCW 9.73.230.

recovered $40 of the marked buy money from the store's cash register. Officer Jepson went back to the motel and waited for Matthews to return.

After the drug transaction was completed, Officer Holden requested a warrant to search Matthews, the hotel room, and the Cadillac. He told the officers at the motel to stop Matthews when he returned to the motel and to arrest him on outstanding felony warrants. When Matthews drove into the motel parking lot, he was stopped by three Sumner police officers. He was alone in the Cadillac.

Matthews consented to a search of his pockets, and the officers found $60 of the marked buy money and a glass vial containing four pieces of rock cocaine. The police also saw in the Cadillac a large baggie of cocaine that was on the floorboard underneath the front seat. When the officers were advised that the search warrant had been obtained, they searched the trunk of the Cadillac and found a loaded .357 handgun.

Kletke is the registered owner of the Cadillac. He testified that Matthews drove the car but that it was registered in his name at Matthews's request for "safety." Kletke also denied owning the gun. Lonnie testified that Matthews drove the Cadillac most of the time. He said that Matthews takes very good care of the car: "He shines it, washes it, wouldn't let nobody smoke in it." The defense presented three witnesses who said that Kletke owned the car and drove it all of the time. They also said that Kletke owned the gun found in the trunk.

## ANALYSIS
### Did the Tacoma police act outside their jurisdiction when they intercepted and recorded a telephone call in Tacoma that was placed from a location in Sumner?

Matthews argues that the tape recording of his conversation with Lonnie should have been suppressed because the Tacoma police did not have authority under RCW 9.73.230 to intercept a telephone call from Sumner. We disagree.

Intercepting and recording private communications without the consent of all parties is generally prohibited in Washington. *State v. Jimenez*, 128 Wn.2d 720, 723, 911 P.2d 1337 (1996); *See* RCW 9.73.030. But RCW 9.73.230 provides an exception for criminal investigations involving the manufacture, delivery, or sale of controlled substances. *Kadoranian v. Bellingham Police Dep't.*, 119 Wn.2d 178, 184, 829 P.2d 1061 (1992). Under this exception, the police may, without prior judicial approval, authorize the interception and recording of a telephone conversation if (1) at least one party to the conversation consents to the interception or recording, (2) the officers have probable cause to believe the communication involves the unlawful manufacture, delivery, or sale of a controlled substance, and (3) a written report is completed as required by the statute. RCW 9.73.230(1)(a)-(c); *See Kadoranian*, 119 Wn.2d at 184.

The disputed section of the statute further provides:

> An authorization under this section is *valid in all jurisdictions within Washington* state and for the interception of communications from additional persons if the persons are brought into the conversation or transaction by the nonconsenting party or if the nonconsenting party or such additional persons cause or invite the consenting party to enter *another jurisdiction*.

RCW 9.73.230(3) (emphasis added).

The State argues that the phrase "valid in all jurisdictions within Washington" allows officers from one jurisdiction to enter another jurisdiction within the state to execute an intercept authorization. They further contend that the term "another jurisdiction" must refer to a jurisdiction outside the State of Washington. But based on the Supreme Court's holding in *Kadoranian*, 119 Wn.2d at 178, we need not reach this issue.

In *Kadoranian*, the Bellingham police authorized the interception and recording of a call placed by an informant in Bellingham to a suspected drug dealer in Canada. The suspect's 15-year-old daughter answered the phone, and the police inadvertently recorded a brief conversation be-

tween her and the informant. The daughter brought a civil action for damages under RCW 9.73.230(11). *Kadoranian*, 119 Wn.2d at 180-82. She argued that the language of RCW 9.73.230(3), stating that authorizations are "valid in all jurisdictions within Washington state," limits the power to intercept telephone conversations to those initiated and received within the territorial boundaries of the state. *Kadoranian*, 119 Wn.2d at 184. The Supreme Court disagreed, holding that "[t]he privacy act does not limit the territory in which telephone calls may be intercepted, as long as the interception occurs in Washington." *Kadoranian*, 119 Wn.2d at 183.

Because the language of section (3) is ambiguous, the court looked to legislative intent and determined that the purpose of the statute is to assist police in investigating illegal drug activities. The court said:

> [W]e interpret the language that an authorization "is valid in all jurisdictions within Washington state" to mean that the *authorization* may be used to justify an interception and to serve as a basis for admission of lawfully obtained evidence in any court in this state. This language does not limit the territory within which the call may be made, but rather clarifies the authority of law enforcement officers to act outside their own particular jurisdictions in certain drug investigations.

*Kadoranian*, 119 Wn.2d at 185.

The court concluded that this section of the statute was not implicated in Kadoranian's case because "the police issued and applied the authorization within their own jurisdiction, the city of Bellingham." *Kadoranian*, 119 Wn.2d at 186. And, in answering the argument that the interception violated Canadian law, the court said that "[i]nterceptions and recordings occur where made." *Kadoranian*, 119 Wn.2d at 186. Thus, because the interception and recording took place in Bellingham, the legality of the process was tested against Washington law, not Canadian. *Kadoranian*, 119 Wn.2d at 186.

Matthews does not cite *Kadoranian*; instead he relies on

our decision in *State v. Knight*, 79 Wn. App. 670, 904 P.2d 1159 (1995), *review denied*, 129 Wn.2d 1005 (1996), which was decided after *Kadoranian*. *Knight* involved a joint drug task force between Clark and Skamania Counties. Members of the drug task force recorded two drug buys from a resident of Stevenson, an incorporated municipality within Skamania County. A Vancouver police officer, a member of the joint task force, wore a body wire while making both purchases. For the first buy, the Vancouver officer received authorization for the wire from the supervisor of the drug task force, a lieutenant in the Clark County Sheriff's Office. For the second buy, he received intercept authorization from a captain in the Vancouver Police Department, who was not a member of the drug task force. *Knight*, 79 Wn. App. at 673-75.

The defendants argued that neither the Clark County Sheriff's Office nor the Vancouver Police Department could authorize an intercept and recording in Stevenson. We agreed that an officer may not authorize the interception or recording of conversations outside his jurisdiction. *See Knight*, 79 Wn. App. at 679-80. Reading the language of section (3) in its entirety, we accepted the argument that "by necessary implication . . . an authorization to intercept and record is invalid outside the jurisdiction of the issuing supervisor except when 'the nonconsenting party or such additional persons cause or invite the consenting party to enter another jurisdiction.'" *Knight*, 79 Wn. App. at 679. Thus, we held that the authorization for the second recording was invalid because the Vancouver police officer, who was not a member of task force, could not authorize the recording of a conversation outside his jurisdiction. But we held that the first recording was valid because the task force agreement gave its supervisor jurisdiction to authorize the recording of conversations in Stevenson. *Knight*, 79 Wn. App. at 680-82.

Here, the Tacoma police authorized the recording of a telephone conversation from a drug dealer suspected of distributing cocaine from a location in Tacoma. They paged

Matthews from Tacoma. And, although he returned the call from Sumner, the interception and recording occurred where made—Tacoma. *See Kadoranian*, 119 Wn.2d at 186. Just as in *Kadoranian*, the police "issued and applied the authorization within their own jurisdiction." *Kadoranian*, 119 Wn.2d at 186. Thus, RCW 9.73.230(3), which "clarifies the authority of law enforcement officers to act outside their own particular jurisdictions in certain drug investigations" does not apply. *Kadoranian*, 119 Wn.2d at 185. *Knight* is distinguishable because there the Vancouver police officer entered another jurisdiction and recorded a conversation. Thus, we conclude that the tape recording was not illegally obtained and the trial court did not err in admitting it.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and BRIDGEWATER, JJ., concur.