186 P.3d 1062 (2008)
STATE of Washington, Respondent,
v.
Desmond Earl MODICA, Appellant.
No. 79767-6.
Supreme Court of Washington, En Banc.
Argued February 12, 2008.
Decided July 10, 2008.
*1063 Vanessa Mi-jo Lee, Attorney at Law, Seattle, WA, for Petitioner.
Randi J. Austell, Attorney at Law, King Co. Pros. Attorney, Prosecuting Atty. King County, King Co. Pros/App Unit Supervisor, Seattle, WA, for Respondent.
CHAMBERS, J.
¶ 1 Desmond Modica was arrested after striking his wife in the face. While in jail, he called his grandmother almost everyday. Near the jailhouse telephones was a sign warning that calls would be recorded, a fact confirmed by an automatic message played for every person making or receiving a call from these telephones. We must decide whether Modica's calls were nonetheless "private," protected by the Washington privacy act, chapter 9.73 RCW, and not admissible in court. We conclude the calls were not private and affirm.

FACTS
¶ 2 Kerry Solandros was on her way to work early one morning when she saw a woman with a bloody face stumbling down the sidewalk. Solandros pulled over, offered to help, and called 911. The woman, who was married to Modica, was taken to the hospital where she told the emergency room physician that her husband had punched her in the face. The hospital examination found multiple fractures to her nasal bone, and the police arrested Modica. He was initially charged with assault and resisting arrest and ordered to have no contact with his wife.
¶ 3 Shortly before Modica was arrested, the King County jail installed a new recording system that automatically recorded every call made and tracked every number dialed. Again, signs are posted near the telephones warning that calls will be recorded, and an automated message repeats that warning to both those making and receiving the calls. For example, when Modica called his grandmother, both of them heard:
Hello, this is a collect call from [Desmond] an inmate at King County Detention Facility. This call will be recorded and subject to monitoring at any time. To accept the charges dial three. To decline the charges dial nine or hang up now. Thank you for using Public Communication Services. You may begin speaking now.
Ex. 19, track 1.
¶ 4 Modica enlisted his grandmother's help in arranging for his wife to evade the prosecutors and not appear in court. After Ms. Modica stopped responding to calls both from a King County domestic violence advocate and the prosecutor's increasingly urgent efforts (including a subpoena), the State listened to some of these recorded calls. After listening, the State promptly and successfully moved for a material witness warrant for Ms. Modica and added a witness tampering charge to its existing case against Modica.
¶ 5 At trial, the judge denied Modica's motion to exclude the taped conversations and several of the calls were played for the jury. These recorded calls strongly supported the witness tampering charge. The jury convicted Modica of two counts of assault, one count of resisting arrest, and one count of tampering with a witness. The Court of Appeals affirmed. Modica sought our review only of the trial court's admission of the recordings of the conversations with his grandmother and asked that we suppress the recordings and reverse his tampering conviction.

ANALYSIS
¶ 6 Generally, our privacy act makes it "unlawful . . . to intercept, or record any: (a) [p]rivate communications transmitted by telephone . . . between two or more individuals . . . without first obtaining the consent of all the participants in the communication." RCW 9.73.030(1). "Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case in all courts of general or limited jurisdiction in this state." RCW 9.73.050. Whether a conversation is private is a question of fact but may be decided as a question of law where, as here, the facts are not meaningfully in dispute. State v. Townsend, 147 Wash.2d 666, 673, 57 P.3d 255 (2002) (citing State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996)).
*1064 ¶ 7 The privacy act does not define "private," but we have previously found it means "`belonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or public.'" Clark, 129 Wash.2d at 225, 916 P.2d 384 (alterations in original) (quoting Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 189-90, 829 P.2d 1061 (1992)). Among other things, the subject matter of the calls, the location of the participants, the potential presence of third parties, and the role of the interloper are relevant to whether the call is private. State v. Christensen, 153 Wash.2d 186, 193, 102 P.3d 789 (2004) (citing Clark, 129 Wash.2d at 225-27, 916 P.2d 384). Further, "[a] communication is private (1) when parties manifest a subjective intention that it be private and (2) where that expectation is reasonable." Christensen, 153 Wash.2d at 193, 102 P.3d 789 (citing Townsend, 147 Wash.2d at 673, 57 P.3d 255).
¶ 8 We will assume for purposes of our analysis that Modica and his grandmother intended that their conversations be private. This case then turns on whether that expectation was reasonable. We hold under these facts it was not. First, we have already held that inmates have a reduced expectation of privacy. State v. Campbell, 103 Wash.2d 1, 23, 691 P.2d 929 (1984). Second, both Modica and his grandmother knew they were being recorded and that someone might listen to those recordings. Modica made the calls under a physical sign on the wall warning of that fact. He and his grandmother had to listen to an automated system's warning that the call will be "recorded and [is] subject to monitoring at any time." Ex. 19, track 1; cf. Lewis v. Dep't of Licensing, 157 Wash.2d 446, 459, 139 P.3d 1078 (2006). What is more, Modica and his grandmother were recorded discussing the fact that their calls were being recorded. Whatever expectation of privacy they had, it was not reasonable.
¶ 9 However, we caution that we have not held, and do not hold today, that a conversation is not private simply because the participants know it will or might be recorded or intercepted. See generally State v. Faford, 128 Wash.2d 476, 910 P.2d 447 (1996) (privacy act protects cordless telephone calls even if the participants know they can be intercepted); cf. State v. Jones, 95 Wash.2d 616, 627, 628 P.2d 472 (1981); State v. Grove, 65 Wash.2d 525, 527, 398 P.2d 170 (1965). Intercepting or recording telephone calls violates the privacy act except under narrow circumstances, and we will generally presume that conversations between two parties are intended to be private. Signs or automated recordings that calls may be recorded or monitored do not, in themselves, defeat a reasonable expectation of privacy. However, because Modica was in jail, because of the need for jail security, and because Modica's calls were not to his lawyer or otherwise privileged, we conclude he had no reasonable expectation of privacy.[1]
¶ 10 The State also argues that these particular calls could not be private because Modica intended that messages be passed on to his wife. We do not find this argument persuasive. While in some circumstances, the fact that the content of the call is intended to be passed on to another may be relevant to whether it is private, it is certainly not determinative. This is not like State v. Forrester, 21 Wash.App. 855, 861-62, 587 P.2d 179 (1978), where the defendant made calls to the police taking responsibility for a gruesome double homicide and threatening to kill again unless paid off. The defendant asked the police officer answering the telephone to arrange for the police chief and city mayor to be present for a second call where he asked for $10,000 to be delivered to a bowling alley restroom by a young boy. Id. at 858-59, 587 P.2d 179. He also threatened to kill again and report to the world that the city could have prevented the death by paying the money. Id. Taken as a whole, the court reasonably found that "[t]hese are not the statements of someone who expects the substance of his telephone call to remain *1065 confidential." Id. at 862, 587 P.2d 179. But the mere fact that a portion of the conversation is intended to be passed on does not mean a call is not private and must be determined from the totality of the circumstances.
¶ 11 Given our holding, we need not reach whether Modica and his grandmother impliedly consented to having their conversations recorded.[2]

CONCLUSION
¶ 12 We hold that the State did not violate the privacy act by recording these particular calls. Accordingly, the trial court did not err by admitting the recordings. We affirm Modica's conviction.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, AND DEBRA L. STEPHENS, JJ.
SANDERS, J. (dissenting).
¶ 13 "[Washington's privacy act, chapter 9.73 RCW] is one of the most restrictive electronic surveillance laws ever promulgated." State v. O'Neill, 103 Wash.2d 853, 878, 700 P.2d 711 (1985). Today the majority has changed this calculus by allowing jails to record and listen to an inmate's telephone conversations, thereby significantly limiting the act's protections. I believe the privacy act requires phone conversations between family members remain confidential, even where one of the family members "has been charged with a crime, is held on a petty or serious offense, is [in jail] for public safety reasons, or simply is too poor to afford minimal bail." Majority at 1065 n. 2. I would hold the phone conversations at issue here were private and should not have been admitted into evidence.
¶ 14 The Washington privacy act plainly prohibits intercepting or recording a private telephone conversation without the consent of the parties to the conversation.
[I]t shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:
(a) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication.
RCW 9.73.030(1). Violation of the privacy act is not only a gross misdemeanor[1] but also can give rise to a civil cause of action.[2] Although the King County jail may have committed both a tort and a gross misdemeanor in recording Desmond Modica's conversations with his grandmother, this case involves the provision prohibiting the use of illegally recorded conversations as evidence in a criminal trial. RCW 9.73.050 ("Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible in any civil or criminal case. . . . ").
¶ 15 Whether a conversation is private is based on both the subjective intentions of the parties and other factors demonstrating whether the parties' intentions to keep the conversation private were reasonable. State v. Clark, 129 Wash.2d 211, 225, 916 P.2d 384 (1996). These factors are the "[d]uration and subject matter of the conversation," the "[l]ocation of [c]onversation and [p]resence or [p]otential [p]resence of a[t]hird [p]arty," and the "[r]ole of the [n]onconsenting [p]arty and *1066 [h]is or [h]er [r]elationship to the [c]onsenting [p]arty." Clark, 129 Wash.2d at 225-26, 916 P.2d 384 (emphasis omitted). A conversation is private if it "`belong[s] to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.'" Kadoranian v. Bellingham Police Dep't, 119 Wash.2d 178, 190, 829 P.2d 1061 (1992) (alterations in original) (quoting State v. Forrester, 21 Wash. App. 855, 861, 587 P.2d 179 (1978) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969))).
¶ 16 Clearly, conversations between a man and his grandmother are intended to be private. Like the conversations at issue in State v. Faford, 128 Wash.2d 476, 910 P.2d 447 (1996), Modica's conversations with his grandmother were intended to remain confidential. The conversations were not "inconsequential, nonincriminating telephone conversation[s] with a stranger," which the court has held "lacked the expectation of privacy necessary to trigger the privacy act." Id. at 484-85, 910 P.2d 447 (citing Kadoranian, 119 Wash.2d at 190, 829 P.2d 1061; State v. Slemmer, 48 Wash.App. 48, 52, 738 P.2d 281 (1987); Forrester, 21 Wash.App. at 861, 587 P.2d 179).
¶ 17 Moreover, the court has held a defendant's subjective intention that communication was private was reasonable in State v. Townsend, 147 Wash.2d 666, 674, 57 P.3d 255 (2002). In Townsend the defendant sent a series of sexually explicit messages to a police detective who was posing as a 13-year old girl named "Amber." Id. at 670, 57 P.3d 255. The court held these messages were private based in part on the subject matter of the conversation. Id. at 674, 57 P.3d 255. In this case Modica was conversing with his grandmother about helping his wife to avoid testifying at his trial. Like Townsend this is strong evidence the conversations at issue here were private.
¶ 18 That Modica and his grandmother knew the call may be monitored does not make Modica's expectation that the conversation was private unreasonable. As we have previously stated, "[t]he mere possibility that interception of the communication is technologically feasible does not render public a communication that is otherwise private." Id.; see also Faford, 128 Wash.2d at 486, 910 P.2d 447 ("We will not permit the mere introduction of new communications technology to defeat the traditional expectation of privacy in telephone conversations.").
¶ 19 That telephone conversations from detained individuals are intended to be protected by the privacy act is demonstrated by the legislature's enactment of an exception for state prisons. RCW 9.73.095.[3] That provision allows "[i]ntercepting, recording, or divulging any telephone calls from an offender or resident of a state correctional facility; or intercepting, recording, or divulging any monitored nontelephonic conversations in offender living units, cells, rooms, dormitories, and common spaces where offenders may be present." RCW 9.73.095(1). The legislature has not seen fit to include a similar exception for county jails. Following the maxim expressio unius est exclusio alterius, we must hold the legislature, in excluding state prisons from the privacy act, intended to include other correctional facilities. Moreover, if calls from a correctional facility are not protected by the privacy act "because of the need for jail security," the provision excluding state correctional facilities would be superfluous. Majority at 1064. A reading which leads to superfluous results is to be avoided. In re Det. of Martin, 163 Wash.2d 501, 510, 182 P.3d 951 (2008).
¶ 20 The majority allows the admission of recorded conversations of individuals detained in jail, innocent or not,[4] in part because *1067 the calls were "not to [a] lawyer or otherwise privileged." Majority at 1064. It fails to recognize privileged conversations are not admissible into evidence, notwithstanding the privacy act. See RCW 5.60.060. The majority eviscerates the privacy act by effectively reducing its protections to that provided by other statutes. The privacy act in this situation provides no more protection to private communications than do the rules of evidence.
¶ 21 However even private conversations, like the ones here, are not protected by the privacy act where the parties consent to their disclosure. The State incorrectly argues Modica and his grandmother consented to the recording because they were notified the call could be recorded. However, notification does not equal consent. If notification were equivalent to consent to record and disclose private conversations, violating individual's rights would be avoided by announcing you intended to do so. See United States v. Novak, 453 F.Supp.2d 249, 257 n. 3 (D.Mass. 2006) (citing Blackburn v. Snow, 771 F.2d 556, 563 (1st Cir.1985)).
¶ 22 Any purported consent here was involuntary and therefore invalid. This court has previously held consent cannot be voluntary where the individual was unaware he had the ability to refuse consent. State v. Ferrier, 136 Wash.2d 103, 116, 960 P.2d 927 (1998). It stands to reason then if an individual cannot consent without being aware of the ability to refuse, an individual cannot consent when he has no ability to refuse. Modica had no other options to speak with his grandmother, except to use the jail phone, which in turn, recorded their conversation. Because Modica lacked the ability to avoid recording his phone calls, the "consent" here is illusory at best.
¶ 23 The majority undermines the protections provided by Washington's privacy act when it holds conversations between those in county jails and their loved ones are not private. The legislature intended these conversations to be protected or else county jails would have been included in the state prison exception. Moreover, any "consent" to record these conversations was illusory at best because the parties lacked meaningful choice. I would continue to limit the power of the State to surveil its citizens by holding these recordings were contrary to the privacy act and should have been excluded from evidence at trial.
¶ 24 I dissent.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice.
NOTES
[1] We note that such facts may also be relevant to the issue of implied consent. Townsend, 147 Wash.2d at 676, 57 P.3d 255.
[2] Accordingly, we also have no cause to reach Modica's argument that we should not find implied consent because the situation was inherently coercive. Modica points out that he did not have the option of using an untapped telephone and that every call made by an inmate is recorded. This happens whether the inmate has been charged with a crime, is held on a petty or serious offense, is there for public safety reasons, or simply is too poor to afford minimal bail. The State may, at its whim, listen to conversations with family, friends, and employers and if it finds the conversation useful, may use it against the inmate. Nothing in this opinion should be taken to prejudge a future challenge to this practice, if properly supported with authority.
[1] RCW 9.73.080(1).
[2] RCW 9.73.060.
[3] In addition to allowing for recording of the calls, the statute institutes a series of safeguards to protect the rights of the inmate. These include limiting the individuals who can access the recordings, the situations in which the tapes can be divulged, the time the tapes could be held, and prohibiting recording conversations between an inmate and his attorney. None of these safeguards is provided to those detained in jail by the majority opinion.
[4] The majority fails to make any distinction between individuals who are incarcerated following conviction, those held prior to posting bail, and those held for trial because they were unable to post bail. The phone calls of the innocent are recorded just as the phone calls of the guilty.