
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73299-4-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| KEITH THOMAS BLAIR, | ) ) | |
| Appellant. | ) ) | FILED: June 6, 2016 |

APPELWICK, J. — Blair was convicted of conspiracy to possess with intent to deliver marijuana. The trial court admitted a recording of a telephone call he made to his wife from the King County Jail. Blair argues that the recording violated the Washington privacy act, and therefore the trial court erred in admitting it. We affirm.

## FACTS

In February 2011, Keith Blair was incarcerated in the King County Jail. On February 19, 2011, Blair called his wife, Rachel Dunham, using the jail telephone system. Both Blair and Dunham were informed that their conversation would be recorded. They each pressed a button on their telephones to accept this condition.

King County Sheriff's Office Detective Cary Coblantz was listening to Blair and Dunham's phone call as it was occurring. He heard Blair tell Dunham to give

$40 worth of "green"[1] to someone named Chris "here" at 5:30 p.m. Blair instructed Dunham to shred it up and put it in a "rubber." Dunham responded that she understood, but she was afraid it was a set up. And, she told Blair that they should not be having this conversation over the telephone. Blair replied, "Yeah, I know."

After hearing this conversation, Detective Coblantz conducted surveillance around the jail the next day. He observed a man, later identified as Christopher Yates, looking around outside the jail and entering the jail shortly before 6:00 p.m. After Yates entered the jail, Detective Coblantz saw Dunham arrive in a car. Detective Coblantz impounded Dunham's car and obtained a search warrant for the car. When Detective Coblantz executed the search warrant, he found a package containing a condom filled with marijuana.

The State charged Blair with conspiracy to possess with intent to deliver marijuana and attempted introduction of contraband in the second degree. The trial court admitted the recording of Blair and Dunham's phone call. The jury found Blair guilty of conspiracy.

Blair moved for a new trial or arrest of judgment. The trial court granted his motion and vacated the jury verdict on the conspiracy charge. The State appealed. This court reversed the arrest of judgment. State v. Blair, noted at 173 Wn. App. 1026, 2013 WL 791854, at *1. On remand, the trial court sentenced Blair to two months confinement, to run concurrently with the sentences in two other cases. Blair appeals.

---

[1] Detective Coblantz testified that he understood "green" to refer to marijuana.

DISCUSSION

Blair asserts that the trial court erred in denying his motion to suppress the recording of the jail call between him and his wife. He contends that this telephone call was a private communication within the meaning of the Washington privacy act, chapter 9.73 RCW, because it was protected by the spousal communications privilege.

Before trial, Blair moved to suppress the recorded telephone conversation between him and Dunham. The trial court ultimately decided to deny Blair's motion to exclude the telephone call on the grounds that the spousal privilege does not apply to statements made between spouses in furtherance of a conspiracy. On appeal, the parties focus their arguments on whether the conversation was private within the meaning of the privacy act. As such, we do not address the question of whether a crime-fraud exception to the spousal communications privilege exists.

Under Washington's privacy act, it is "unlawful . . . to intercept, or record any: . . . [p]rivate communication transmitted by telephone . . . between two or more individuals . . .without first obtaining the consent of all participants in the communication." RCW 9.73.030(1). Any information obtained in violation of this provision is inadmissible in a civil or criminal case. RCW 9.73.050.

This court applies a four-pronged test to determine whether the privacy act has been violated. State v. Christensen, 153 Wn.2d 186, 192, 102 P.3d 789 (2004). For there to be a violation, "[t]here must have been (1) a private communication transmitted by a device, which was (2) intercepted by use of (3) a

3

device designed to record and/or transmit, (4) without the consent of all parties to the private communication." Id.

The issue in this case is whether the communication between Blair and Dunham was private within the meaning of the privacy act. Whether a conversation is private is a question of fact. State v. Clark, 129 Wn.2d 211, 225, 916 P.2d 384 (1996). But, where the facts are undisputed, as they are here, it may be decided as a question of law. Id. Washington courts have given the term "private" its ordinary definition: " 'belonging to one's self . . .secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public.' " State v. Faford, 128 Wn.2d 476, 484, 910 P.2d 447 (1996) (alterations in original) (quoting Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992)).

To determine whether a particular conversation is private, this court looks at the subjective intent of the parties to the conversation and whether that intent reflects a reasonable expectation of privacy. Christensen, 153 Wn.2d at 193. This court assesses several factors to determine the reasonableness of the privacy expectation. Id. These include the duration and subject matter of the communication, the location of the communication and the potential presence of third parties, and the role of the nonconsenting party. Id.

Applying these factors, the Washington Supreme Court has held that, in the context of the privacy act, an inmate in a local jail does not have an objectively reasonable expectation of privacy in telephone calls to his grandmother made from

4

jail. State v. Modica, 164 Wn.2d 83, 87-88, 186 P.3d 1062 (2008). Modica was an inmate at the King County Jail. Id. at 86. The King County Jail's recording system automatically recorded every telephone call made, tracked the numbers dialed, and had signs near the telephones warning that inmates' calls were being recorded. Id. And, an automated message repeated that warning to both the inmate and the recipient of the call. Id. Modica called his grandmother and attempted to procure her assistance in ensuring that his wife would not cooperate with the State or appear in court. Id. at 87. The State listened to some of their recorded telephone calls, and the calls were played to the jury during the trial. Id.

The court assumed that Modica and his grandmother intended their conversations to be private. Id. at 88. But, the court held that this expectation of privacy was not reasonable for two reasons. Id. First, inmates have a reduced expectation of privacy. Id. Second, Modica and his grandmother knew that their calls were being recorded and that someone could listen to them. Id.

We also assume that Blair and Dunham had the subjective intent that their conversation would remain private.[2] Blair too was an inmate with a reduced expectation of privacy. And, both he and Dunham knew that their call was being recorded and potentially monitored—they each pressed a button to acknowledge this. Thus, Modica indicates that Blair did not have an objectively reasonable expectation of privacy in his conversation with Dunham. Therefore, following Modica, the conversation would not be protected by the privacy act.

_____

[2] Blair and Dunham were both aware that their conversation would be recorded. But, they used code words during the conversation, suggesting that they intended the meaning of the telephone call to remain secret.

However, Blair cites to language in <u>Modica</u> and argues that its holding is subject to some limitations—including the spousal communication privilege. He points to the <u>Modica</u> court's caution that it was not holding "that a conversation is not private simply because the participants know it will or might be recorded or intercepted." 164 Wn.2d at 88. The court noted,

> Signs or automated recordings that calls may be recorded or monitored do not, in themselves, defeat a reasonable expectation of privacy. However, because Modica was in jail, because of the need for jail security, and <u>because Modica's calls were not to his lawyer or otherwise privileged</u>, we conclude he had no reasonable expectation of privacy.

<u>Id.</u> at 89 (emphasis added). Blair asserts that this language means that conversations between spouses, which are presumptively privileged, are protected as private under the privacy act.

Blair's argument misinterprets the spousal communications privilege. This privilege is an evidentiary doctrine that provides that neither spouse can testify about communications made between them during marriage, without the other spouse's consent. RCW 5.60.060(1). The purpose of the privilege is to encourage the free exchange of confidences between spouses. <u>State v. Thorne</u>, 43 Wn.2d 47, 55, 260 P.2d 331 (1953). But, only successful confidential communications are protected by this privilege. <u>State v. Wilder</u>, 12 Wn. App. 296, 299, 529 P.2d 1109 (1974). If a third party overhears a conversation between spouses, the third party may testify to that conversation. <u>Thorne</u>, 43 Wn.2d at 56.

Washington courts have addressed the issue of whether spousal communications when one spouse is in jail are protected by the privilege. <u>State v.</u>

Grove, 65 Wn.2d 525, 527, 398 P.2d 170 (1965); State v. Smyth, 7 Wn. App. 50, 53, 499 P.2d 63 (1972). In Grove, the court held that a letter written from an inmate in jail to his spouse was not protected by the spousal communications privilege. 65 Wn.2d at 527. There, the inmate delivered an unsealed letter to a jail guard, knowing that the jail rules required it to be censored. Id. And, the letter was stamped with the letter C, indicating that it had been censored. Id. On these facts, the court held that the letter was neither intended to be confidential nor actually confidential, and therefore the spousal communications privilege did not protect it. Id.

Blair asserts that Grove is distinguishable, because it was not a privacy act case. Instead, he argues that Modica should control. But, Grove did involve the question whether the spousal privilege protected the communication from disclosure. 65 Wn.2d at 527. That is the same argument Blair seeks to interject into the analysis of the privacy act. Modica by contrast involved a conversation between an inmate and his grandmother—there was no issue of spousal privilege in that case.

Here, as with the letter in Grove, Blair knew that the content of the communication with Dunham was subject to monitoring. Warning was given of recording. Acceptance of that condition was sought and given by both parties to the conversation in advance. The conversation was actually recorded, and Detective Coblantz listened to it. It was not a successful confidential communication.

7

Blair argues that this fact is not significant because all jail calls are recorded, and Modica says that warnings that all communications may be monitored do not automatically defeat the expectation of privacy. We disagree. First, not all potentially privileged conversations are recorded in the King County Jail—the system automatically screens out calls made by inmates to attorney identified telephone numbers. Thus, the attorney-client privilege would still apply to these conversations, because they remain confidential. See Morgan v. City of Federal Way, 166 Wn.2d 747, 757, 213 P.3d 596 (2009) (a communication must be made in confidence to qualify for the attorney-client privilege). But, the jail does not screen out calls from inmates to their spouses, so the spousal communications privilege would not apply. Second, Modica recognized that the jail setting was distinct from the general caution about warning signs. 164 Wn.2d at 89. Third, the spousal communications privilege explicitly applies only to successful confidential communications, even in the jail context. Grove, 65 Wn.2d at 527.

The "or otherwise privileged" phrase in Modica has potentially implicated one or more recognized privileges in the analysis of what is a reasonable expectation of privacy under the privacy act. But, it did not grant absolute protection for intercepted spousal communications. See Modica, 164 Wn.2d at 89. The reasonable expectation of privacy test remains applicable. Applying that test on these facts, we are compelled to conclude that Blair did not have a reasonable expectation of privacy in the content of the call from the jail.

Without a reasonable expectation of privacy, the telephone call between Blair and Dunham cannot be considered private. Only private conversations are

8

protected by the privacy act. RCW 9.73.030(1)(a). Therefore, the telephone call was not recorded in violation of the act, and the trial court did not err by denying Blair's motion to exclude it at trial.

We affirm.

WE CONCUR: