

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JAN 22 AM 9: 52

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) No. 75709-1-I |
| | ) |
| Respondent, | ) DIVISION ONE |
| | ) |
| v. | ) |
| | ) |
| MICHAEL THANH DONERY, | ) UNPUBLISHED |
| | ) |
| Appellant. | ) FILED: January 22, 2018 |
| | ) |

COX, J. — Michael Donery pleaded guilty to one count of possession of methamphetamine. On appeal, he contends the trial court violated his constitutional right to self-representation when it failed to consider his multiple oral requests to proceed pro se. But when viewed in context, Donery's requests were not unequivocal, and he failed to either pursue or argue his written motion to proceed pro se. Donery also fails to demonstrate that his guilty plea was involuntary. We affirm.

On June 25, 2015, the State charged Donery in Skagit County Superior Court with one count of possession of methamphetamine. A short time later, the State amended the charge to possession with intent to deliver. In September 2015, the State added a count of possession of a dangerous weapon.

Throughout a series of pretrial hearings, Donery repeatedly interrupted the proceedings, raising various objections and challenging the court's jurisdiction. At arraignment on July 16, 2015, Donery announced that his "name is not a straw

man name, and I'm not incorporated."[1] Donery, who was represented by counsel, also asserted that he did not recognize the court's jurisdiction and that he would not be "conducting any business with this Court."[2]

On September 10, 2015, the date of the omnibus hearing, Donery objected that he was being housed in Whatcom County, rather than in Skagit County, a situation that prevented him from meaningful contact with his attorney. Donery attempted to present the court with a motion to transport him back to Skagit County:

> I believe I've been denied effective assistance of counsel here being transferred from one county to another. I believe my Sixth Amendment Rights are being violated and the first amendment of the United States Constitution. I cannot adequately be represented without my lawyer to be able to make phone calls on a daily basis. Over in this county you can make phone calls on a daily basis. Over there the Public Defender's Office does not accept collect calls and snail mail. I don't believe I can be adequately represented with this lawyer here being separated from this attorney. . . . I am being forced to go pro se because of this?"[3]

Donery further asserted that "I have a right in the First Amendment to challenge the conditions of my confinement."[4]

The court continued the case to the following week to allow Donery to determine whether he wanted to represent himself and to prepare any written motions that he wanted the court to consider.

---

[1] Report of Proceedings (RP) (July 16, 2015) at 2.
[2] Id. at 6.
[3] Id. at 11-12.
[4] Id. at 14.

At the next hearing, on September 16, 2015, the court asked Donery

whether he wanted to represent himself or continue with appointed counsel.

Donery replied:

> Well, your Honor, I believe I'm being forced to represent myself because I'm being transferred from this county as a pretrial detainee transferred to Whatcom County. I have no charges whatsoever there. I was not even arrested in that jurisdiction or venue. But that they transferred me from this venue to another venue on a so-called, quote, courtesy hold. I believe that as a pre-trial detainee I have a right under the 1st and 14th Amendment to due process law under the United States Constitution beyond State law.

> You transferred me interstate commerce on I-5, which gives Federal jurisdiction under Article 1, Section 8 of the Federal constitution under the commerce clause. That's how the Federal government has jurisdiction lawsuits pursuit to 43 of the United States Code 1983. I believe my civil rights are being violated by this Court, and I'm being forced to represent myself because I'm being separated from counsel, which is a violation of my 6th Amendment Right of the United States Constitution incorporated under the 14th Amendment.

> I have no access to paper. I requested for paper over there at the Whatcom County Jail. They faxed this court appointed attorney and said I can't even get paper to have meaningful access to the courts. This is ridiculous. I'm actually been injured, Your Honor. This is crazy. I cannot believe this.[5]

When the court repeated, "So the question is: Do you want to represent

yourself?" Donery responded:

> The question is I'm being forced to represent myself. It's not about a question of I want to, but I'm being forced to. Unless I can do a writ of habeas corpus here from this attorney I have no access to legal paperwork, to paper, to law books, to court rules, or any form of books, practice manuals. As a pretrial detainee I figure I should

---

[5] Id. at 16-17.

have that right because I can't afford bail, which seems like a violation of the equal protection clause.[6]

Defense counsel acknowledged that she had encountered some difficulties and delays in attempting to obtain authorization to contact Donery in the Whatcom County Jail. The court expressed concern whether Donery had sufficient access to counsel in Whatcom County. Donery eventually interjected:

> THE DEFENDANT: For the court of record, Your Honor, I would like to challenge the conditions of my confinement pursuant to RCW 7.36 under the habeas corpus statute. I would request to have access to paper, pen, according to (indistinguishable) 430.8.117 for meaningful access to the courts. I think I believe I'm being denied that, you know. This is ridiculous being locked up like this. Because I can't forward bail this is how you treat people who can't afford bail in this county? This is ridiculous. You should be investigated by the Federal Government by the United States Department Justice Civil Rights Division. This is crazy.
>
> THE COURT: Mr. Donery, at this point in time it appears you are not voluntarily waiving your right to have a lawyer. I'm still going to
> --
>
> THE DEFENDANT: I'm challenging the conditions of my confinement, Your Honor, which is a separate issue here.
>
> . . . .
> THE COURT: We were dealing first directly, before we even get to that, whether you are going to represent yourself. It sounds like you feel that you are being forced to do things on your own; so that's not in my mind a voluntary waiver of your right to have a lawyer.
>
> Now, I'm going to direct [defense counsel] to do what she can with the jail up there to create a scenario where you can have contact with her, that's reasonable.[7]

---

[6] Id. at 17-18.
[7] Id. at 20-21.

On September 30, 2015, the court conducted a CrR 3.5 hearing. Donery was present and represented by counsel, but expressed no desire to proceed pro se. Donery also informed the court that "I'm ready for trial any day."[8]

On October 22, 2015, the trial court granted defense counsel's request for a competency evaluation. Donery expressed no objections.

On November 25, 2015, defense counsel informed the court that the initial report from Western State Hospital found Donery competent, but that the defense was requesting a second evaluation. The court granted the motion. Donery informed the court of his understanding that "our system has gone to crap" and that "this government has been infiltrated by the enemy."[9]

On January 7, 2016, Donery appeared with new appointed counsel, who informed the court that the defense was no longer seeking a second competency evaluation. Donery objected to any attempt "to enter me into a commercial contract here"[10] and repeatedly asserted he did not understand the nature of the charges. As the court attempted to set a date for a competency hearing, Donery interrupted, asserting that "America is legally bankrupt" and questioning the presence of the "golden French flag" and "maritime admiral jurisdiction flag."[11]

At the competency hearing on January 22, 2016, Dr. George Nelson, a forensic psychologist at Western State Hospital, testified that in his opinion,

---

[8] RP (Sept. 30, 2015) at 26.
[9] RP (Nov. 25, 2015) at 30.
[10] RP (Jan. 7, 2016) at 32.
[11] Id. at 36.

Donery "was feigning his symptoms"[12] and malingering. The court found that Donery was competent to stand trial. Donery interrupted, claiming, among other things, that his attorney and the court were incompetent.

After the court set a trial date, Donery responded:

> There is no contract between Skagit County and the public defender's office. They are a county department. So you give me a county department to represent me? The county's charged me and you guys give me a county department to represent me?
> . . . according to the Uniform Commercial Code? The bankruptcy of the corporate state of Washington and a corporate United States here? Is this what this is about, and its solvency proceeding? Is this what you took an oath and office to protect, the fraud of this country ever since the founding? It's a major conspiracy ever since the beginning of time, ever since the founding of the corporation here of the corporate state of Washington and the corporate cities and the corporations you guys take an oath to protect. It's a fraud.
> . . .
> Have a nice day. F*** you all.[13]

At the March 3, 2016 hearing, Donery was present with yet another newly appointed attorney, who requested a continuance to prepare. Donery then repeatedly interrupted the proceedings:

> MR. DONERY: Yes, Your Honor, I'd like also -- I'd also like to --
>
> THE COURT: You'll get a chance -
>
> MR. DONERY: -- take over the record. Yes.
>
> THE COURT: Excuse me. Just a second. Let the attorneys finish and I'll hear from you.

---

[12] RP (Jan. 22, 2016) at 14.
[13] Id. at 18-19.

MR. DONERY: Oh, yeah. I'm taking over, Your Honor.

THE COURT: No, you're not exactly.

MR. DONERY: Okay. Article 1, Section 22, Washington State Constitution. *Faretta v. California.*

THE COURT: If you want to take over, you'll take over in a cell. Do you understand that? If you'd like to stay and participate, then you're going to need to wait for your turn.

. . . .

MR. DONERY: I object to that for the record, Your Honor. And to place this for the record, I also request to also have all the verbatim transcripts so I can file a writ of habeas corpus on the matter for the beginning of the time I was here, from July to this current date. *Faretta v. California, State v. Ortiz.* Let's see, I'm trying to challenge the condition of my confinement. I also need access to photocopies and stuff like that.

THE COURT: Mr. Donery, at this point you're --

MR. DONERY: *State v. Enlow, Hoff, Fritz* and *Ortiz.*

THE COURT: You're represented by counsel at this point.

MR. DONERY: I'm challenging the condition of my confinement, Your Honor, also in the incarceration here for writ of habeas corpus.

THE COURT: This is -- this is --

MR. DONERY: And I also need the record on this because I'm also challenging ineffective assistance of counsel in violation of my Sixth Amendment right under the Federal Constitution.

THE COURT: You need to file some motions and move to withdraw your attorney so you can represent yourself.

MR. DONERY: I need access to law books. I need access to court rules --

THE COURT: Mr. Donery, you don't get any of that unless you're representing yourself and right now you're represented by an attorney.

> MR. DONERY: Oh, I'm going to represent myself.
>
> THE COURT: You're going to have to make some motions to change that status if you wish.
>
> MR. DONERY: Put that on the record.
>
> . . . .
>
> THE COURT: Given the somewhat confusing record before me, under the circumstances and the fact that the attorney has only been on this case a week, I will certainly grant the continuance. I don't have enough background about prior attorneys and withdrawals . . . to make any record regarding those.[14]

Donery's newly appointed counsel informed the court that she would speak with Donery "about how he can address the Court" on the issue of self-representation.

On March 31, 2016, defense counsel informed the court that she wished to raise a pre-trial suppression issue. Defense counsel also sought a continuance to assess the effect of a new, unrelated felony harassment charge against Donery. Donery then informed the court:

> MR. DONERY: Okay. I'm the attorney of fact, attorney of record on this particular case, Your Honor. And I'm going to the country and of this he puts himself upon the country.
>
> This is an adhesion contract are we signing here? This is defendant's pro se motion over here, verbal, comes now Michael Donery on behalf of Michael Donery, moves this Court to proceed in pro per and waive all costs attached to this matter. This motion is based upon the complete records and records herein and public records.
>
> Memorandum of law in support of motion, Article 1, Section 22 of the Washington State Constitution, and the Sixth Amendment of the United States Constitution allows the right to self-representation.

---

[14] RP (Mar. 3, 2016) at 20-23. The record provides no details about the succession of Donery's appointed counsel.

No. 75709-1-I/9

> Someone of technical legal knowledge is not required nor should it be questioned. *State v. Fritz, 21 Wn. App. Reports, page 354*. *State v. Canedo-Astorga, Volume 79, Washington Appellate Reports, page 519 [sic]*. . . . State v. Honton -- *State v. Honton, 85 Washington Appellate Reports, page 415*, decided in 1997.

> THE COURT: All right, Mr. Donery. We're not on for that particular motion.

> [Defense Counsel]: Your Honor, I will add his motion for -- his motion to go pro se --

> MR. DONERY: General Rule 33, Your Honor, for my disability here, to waive all procedural matters here, supposed to have equal access with Americans with Disabilities Acts, Volume 42, United States Code.

> THE COURT: Thank you. I did not know that. But I do now. . . . .

> MR. DONERY: I would request, Your Honor, to move the Court to have access to the law library here to represent my criminal case here so I would be able to get law and I need standby counsel --

> THE COURT: Right now you're represented by [defense counsel], so you're not pro se at this time.

> MR. DONERY: I am on this particular matter, sir.[15]

Donery was apparently referring to a written "Motion to Proceed in Pro Per with Standby Attorney"[16] that he filed the same day. Donery devoted most of the motion to a general assertion of the right to counsel and the right to effective assistance of counsel. The motion concluded:

> Defendant believes SKAGIT COUNTY officials are involved in a Racketeering Influence and Corrupt Organization in violation of federal R.I.C.O. statutes by the Public Defenders and the SKAGIT COUNTY PROSECUTORS in falsifying crimes and filing criminal

---

[15] RP (Mar. 31, 2016) at 25-26.
[16] Clerk's Papers (CP) at 16.

-9-

charges to funnel "County monies" as per Revised Code of Washington 10.101.070 and "City Monies" as per Revised Code of Washington 10.101.080.

WHEREFORE Defense moves for ORDER and Admiralty permission to Proceed Pro Per.[17]

The record indicates that defense counsel assisted Donery in noting his motion to be heard at the next hearing, along with the defense suppression motion.

At the next hearing on May 12, 2016, counsel appeared on Donery's behalf to set a date for the CrR 3.6 motion. Donery informed the court that "my speedy trial rights were violated"[18] and that he was "asserting my right to waste taxpayer's money,"[19] but he did not express any desire to proceed pro se or ask the court to consider his written motion.

The court considered the defense CrR 3.6 motion at a hearing on June 15, 2016. Donery did not ask to proceed pro se or refer to his written motion.

On July 28, 2016, Donery pleaded guilty to the original charge of possession of methamphetamine. Under the terms of the plea agreement, the parties recommended a high end standard-range term of 24 months, and the State agreed to dismiss another charge. The court imposed the recommended standard range sentence of 24 months.

---

[17] CP at 23.
[18] RP (May 12, 2016) at 39.
[19] Id.

*Self-Representation*

Donery contends the trial court violated his constitutional right to self-representation when it failed to address his attempts to proceed pro se. Donery maintains the court ignored his repeated "unequivocal" requests to proceed pro se and refused to consider his written motion. The record fails to support these claims.

Both the State and federal constitutions guarantee a criminal defendant the right to counsel and the right to self-representation.[20] But the right to self-representation is neither absolute nor self-executing.[21] Consequently, a "criminal defendant who desires to waive the right to counsel and proceed pro se must make an affirmative demand, and the demand must be unequivocal in the context of the record as a whole."[22] We review the trial court's decision to grant the defendant's motion to proceed pro se for an abuse of discretion.[23]

Donery does not contend that he made an unequivocal request to proceed pro se during the initial proceedings, when he challenged the court's jurisdiction and repeatedly claimed he was being "forced" to represent himself. The record shows that those claims were based on Donery's objections to being housed in Whatcom County, rather than in Skagit County. As a result, Donery expressed his desire to challenge "the conditions of my confinement." Donery clearly

---

[20] State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).
[21] State v. Woods, 143 Wn.2d 561, 586, 23 P.3d 1046 (2001).
[22] State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008).
[23] Id. at 442.

understood and expressly stated those claims were "a separate issue" from the current criminal prosecution. The trial court properly determined that Donery had not voluntarily waived his right to counsel on this basis.

On appeal, Donery relies solely on his comments during the March 3 and March 31, 2016 hearings that occurred just after the trial court's competency finding. During these hearings, Donery referred to authority supporting the right to self-representation, demanded access to legal materials and verbatim transcripts, and asserted that he wanted to "take over the record . . . I'm going to represent myself . . . I'm the attorney of fact, attorney of record on this particular case." Donery also mentioned "defendant's pro se motion over here, verbal," an apparent reference to his written motion, which was filed on the same date as the hearing.

Donery's comments about proceeding pro se must be assessed in context. The March 3 and 31 hearings were noted to permit Donery's then newly appointed attorney to seek a continuance to prepare and to schedule a suppression motion. But in repeatedly interrupting the proceedings, Donery not only claimed he was representing himself, he also asserted that he was "going to the country," complained about an "adhesion contract," and claimed his rights under GR 33 and the Americans With Disabilities Act. In addition, Donery repeated his earlier request about wanting to file a writ of habeas corpus to challenge "the condition of my confinement." Although Donery attempted to call the court's attention to his written "Motion to Proceed in Pro Per," that motion consisted primarily of general statements about the right to counsel and the right

to effective assistance of counsel. The motion also alleged that Skagit County officials were involved in racketeering.

Viewed in the context of Donery's vague, disconnected, and confused assertions throughout the March 3 and March 31 hearings, as well as his conduct during the numerous prior hearings, Donery's statements about self-representation were not unequivocal. Moreover, then newly appointed defense counsel informed the court during the hearings that she would assist Donery in noting his motion for a later hearing. Under the circumstances, including the purpose of the hearings, the trial court did not abuse its discretion in refusing to immediately interrupt the proceedings to determine the precise nature of Donery's intentions.[24]

The record shows that defense counsel noted Donery's motion for the next hearing date, along with the proposed defense motion to suppress. But although he was present at the two following hearings, Donery did not express a desire to proceed pro se or even refer to his motion. The trial court did not violate Donery's constitutional right to self-representation.

### Involuntary Plea

Donery contends the trial court improperly participated in the plea bargaining process by promising him a standard range sentence. He argues that his guilty plea was therefore involuntary and that he is entitled to an opportunity to withdraw his plea. We disagree.

---

[24] See Madsen, 168 Wn.2d at 504 (trial court may defer ruling on request to proceed pro se "if the court is reasonably unprepared to immediately respond to the request.").

On July 28, 2016, defense counsel informed the court that Donery wished to plead guilty to the reduced charge of possession of methamphetamine. Counsel stated that she had reviewed Donery's criminal history with him, as well as the statement of defendant on plea of guilty.

The court then began the following colloquy:

THE COURT: Alright. You are Michael Donery?

THE DEFENDANT: Yeah, I guess.

THE COURT: You guess? Well, you either have to be or you don't, one or the other. Are you Michael Donery?

THE DEFENDANT: Yeah, except without the capitalized letters.[25]

Donery advised the court that he was entering an Alford[26] guilty plea. Donery acknowledged he understood the consequences of an Alford plea were the same as a regular guilty plea, had reviewed the guilty plea statement with counsel, and had no questions.

THE COURT: Alright. And you are still willing to plead guilty?

THE DEFENDANT: Yeah, the recommended sentence was a stipulated agreement right on the record.

THE COURT: We'll get to the sentence in a minute. I'm just asking if you are still willing to plead guilty as to the charge, which is possession of –

THE DEFENDANT: I just wanted to make sure it was on the record, the stipulated or the withdraw of the plea to go to trial so, yes.

THE COURT: What are you talking about?

---

[25] RP (July 28, 2016) at 74.
[26] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[DEFENSE COUNSEL]: He wanted to make sure the Court was going to follow the recommendation, the recommendation of the high end of the standard range. I did explain to him there was not a basis for an exceptional sentence.

THE COURT: Okay. Good point. So there's going to be a recommendation as to the sentencing made by the attorneys. Now you have to realize the judge, who isn't going to be me, since I'm sitting here now, is not required to follow the recommendations of the attorney. Do you understand that? Let me put it this way, I'm not bound by their recommendation.

[DEFENSE COUNSEL]: I did explain to him, Your Honor, that absent any extenuating circumstances the Court is bound to the standard range.

THE COURT: True, that's true. Any questions about that?

THE DEFENDANT: Outside the recommendation I don't want to plead guilty.

THE COURT: I understand your feeling about that. All I'm telling you is that the judge who sentences you isn't bound by the recommendation. We're bound by the top of the range. We're bound by the sentencing guidelines. What [defense counsel] told you is that the judge without extenuating circumstances I can't go outside the range. And I don't think in this case any extenuating circumstances exist or are even being offered.

THE DEFENDANT: 24 months is the maximum and if not then I will take it to trial is what I want to put on the record; so that's the maximum.

THE COURT: So you're pleading guilty today pursuant to a recommendation for the maximum sentence, which is 24 months.

THE DEFENDANT: No, within that maximum sentence, within the low end to the maximum of 24 months. If it goes outside in any way then I will go to trial. That's what I recommend, if not then it's not binding contract with me.

THE COURT: Outside of what in any way? Outside of 24 months?

THE DEFENDANT: Yep.

THE COURT: Let me see something here. Okay. Your range is 12 months to 24 months. You got that? You understand that?

THE DEFENDANT: Okay.

THE COURT: Okay. The bottom is 12 months and a day, and the top is 24. Except if there were extenuating circumstances, and there aren't, so we're bound by no higher than 24.

THE DEFENDANT: Alright.

THE COURT: Okay. You with me there?

THE DEFENDANT: Yes.

THE COURT: Alright. So the prosecuting attorney is recommending 24 months and credit for time served. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Alright. So your problem would be if you got anymore?

THE DEFENDANT: Exceptional, yes.

THE COURT: I think we are on the same sheet of music. So you are willing to plead guilty as long as the judge stays within the standard range?

THE DEFENDANT: Yes.

THE COURT: I can tell you at this point the judge is going to stay within the standard range because there's no reason . . . legally or factually that would allow me or warrant me to go outside of that.

THE DEFENDANT: Okay.

THE COURT: So let's get that straight. We're staying in the standard range, alright? Based on that are you willing to plead guilty now?

THE DEFENDANT: Yes.

> THE COURT: There appears to be a factual basis in the affidavit of probable cause and the police reports to support the charge. As to the charge of Possession of Methamphetamine, Mr. Donery, how do you plead guilty or not?
>
> THE DEFENDANT: Alford Plea guilty.
>
> THE COURT: Alright. We would accept Mr. Donery's Alford Plea of guilty to the charge of possession of methamphetamine.[27]

The court then imposed the recommended top-end standard range sentence.

Donery has not moved to withdraw his guilty plea. Rather, for the first time on appeal, he contends the trial court essentially promised to impose a standard range sentence and that promise induced him to plead guilty, rendering his plea involuntary.

Donery's arguments rest primarily on our supreme court's decision in State v. Wakefield.[28] In Wakefield, the State charged the defendant with second degree murder after she killed the wheelchair-bound patient she was caring for. After finding the defendant competent to stand trial, the trial judge expressed concern over the defendant's "failure to be receptive to a plea offer that would subject her to much less jeopardy than she would if she goes forward with the trial this afternoon."[29] The judge also urged the defendant to follow the advice of her attorneys. One week later, in response to a request from defense counsel, the trial judge informed the defendant that if she were to plead guilty to manslaughter, she "would certainly be sentenced within that standard range by

[27] RP (July 28, 2016) at 76-79.
[28] 130 Wn.2d 464, 925 P.2d 183 (1996).
[29] Id. at 468.

-17-

this court."[30] Immediately after the court's comments, the defendant spoke with her attorneys and accepted the plea arrangement. But instead of sentencing the defendant within the standard range of 31 to 41 months, the court imposed an exceptional statutory maximum sentence of 10 years based on the vulnerability of the victim.

On appeal, our supreme court noted that the trial judge "should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered."[31] The court stressed that "where a trial court participates in plea negotiations, the critical inquiry is whether such participation resulted in an involuntary plea."[32] In the case before it, the court found that the promise of a standard range sentence "could easily sway a defendant to plead guilty" and concluded that "the trial judge's involvement in the plea negotiations casts significant doubt on the voluntariness of Wakefield's plea."[33] The court remanded the matter back to the trial court to allow the defendant the opportunity to withdraw her guilty plea.

Unlike Wakefield, the trial court here did not overtly intrude into the parties' plea negotiations. Rather, the parties had completed the plea negotiations and Donery had apparently already agreed to the plea and discussed the plea

---

[30] Id. at 469.

[31] Id. at 472-73 (quoting State v. Pouncey, 29 Wn. App. 629, 635, 630 P.2d 932 (1981)); see also State v. Watson, 159 Wn.2d 162, 149 P.3d 360 (2006).

[32] Id. at 473.

[33] Id. at 475.

consequences with his attorney. At this point, the trial court began the plea colloquy. When Donery indicated that he did not want to plead guilty if he was going to receive an exceptional sentence, the trial court attempted to ascertain the precise nature of Donery's concern. The court then correctly described the general limits on the sentencing court's authority to impose an exceptional sentence, information that was consistent with what defense counsel had already told Donery. The court then added that the parties were not recommending an exceptional sentence and that there did not appear to be any circumstances that warranted exceeding the standard range. Donery also indicated he understood the sentencing court was not bound by the plea recommendations.

On appeal, Donery contends that the trial court's comments about an exceptional sentence were incorrect because there was a theoretical possibility that the sentencing court could have convened a jury to determine whether his unscored misdemeanors rendered a presumptive sentence "clearly too lenient" and merited an exceptional sentence.[34] But Donery fails to provide any meaningful analysis explaining how, on this record, this theoretical possibility played any role in his decision to plead guilty.

Generally, the defendant's signature on the written statement on plea of guilty in compliance with CrR 4.2(g), coupled with his acknowledgment that his attorney read the statement to him and he understands it, provides "prima facie

---

[34] RCW 9.94A.535(2)(d).

-19-

verification of the plea's voluntariness."[35] Where the trial court then conducts a colloquy establishing "the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable."[36] A defendant who later tries to retract his admission of voluntariness bears the "heavy burden" of demonstrating the admission was coerced.[37] "The task will be especially difficult where there are other apparent reasons for pleading guilty, such as a generous plea bargain or virtually incontestable evidence of guilt."[38]

Unlike the defendant in Wakefield, Donery makes no showing that he faced a meaningful possibility of an exceptional sentence. Nor did the court promise him a standard range sentence, renege on the promise, and then impose an exceptional sentence. More important, the court here did not urge Donery to enter into a plea agreement or recommend that he accept a plea offer.

On this record, the circumstances here are fundamentally different from those in Wakefield. The court's comments about "the same sheet of music" and "staying within the standard range," when viewed in isolation, could raise concerns. But given the limited record here and the nature of Donery's expressed concerns, Donery has not satisfied his burden of demonstrating any likelihood that his guilty plea was coerced. Moreover, Donery's allegations of an involuntary plea would necessarily rest on matters outside the record and cannot

---

[35] State v. Branch, 129 Wn.2d 635, 642 n.2, 919 P.2d 1228 (1996) (quoting State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)).

[36] Perez, 33 Wn. App. at 262.

[37] State v. Frederick, 100 Wn.2d 550, 558, 674 P.2d 136 (1983), overruled on other grounds by Thompson v. Dep't of Licensing, 138 Wn.2d 783, 982 P.2d 601 (1999).

[38] Id.

No. 75709-1-I/21

be addressed in a direct appeal.[39]  Donery fails to make a showing that his guilty plea was coerced.

We affirm the judgment and sentence.

_Cox, J_

WE CONCUR:

_Trickey, A.C.J_                    _Schindler, J_

---

[39] State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (the court will not review matters outside of the trial record on direct appeal).