IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAND HOME FINANCIAL SERVICES, INC., a California corporation, | No. 86160-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STELIS, LLC, a Delaware limited liability company, | |
| Respondent, | |
| and | |
| DBI COINVESTOR FUND VIII, LLC, a Delaware limited liability company; DREAMBUILDER INVESTMENTS, LLC, a New York limited liability company; and PETER ANDREWS, | |
| Appellants. | |

FELDMAN, J. — The lawsuit at issue in this appeal is part of a complex commercial dispute involving multiple parties and multiple lawsuits in various state and federal courts. DBI Coinvestor Fund VIII LLC, Dreambuilder Investments LLC, and Peter Andrews (collectively DBI) challenge the trial court's entry of judgment against them after affirming and adopting a referee's decisions and orders. DBI argues the referee lacked authority to resolve this litigation and that the trial court's

decision violated DBI's statutory and due process rights. Finding no entitlement to relief, we affirm.

I

Land Home Financial Services, Inc. (Land Home) is a servicer of mortgage loans. DBI is a private equity investment fund that purchases, services, and liquidates defaulted residential home mortgages nationwide. Stelis LLC (Stelis) is an investor.

In August 2013, Land Home entered into a specialty loan servicing agreement (SLSA) with Stelis and DBI to provide administrative services for a residential home loan portfolio in which DBI and Stelis held interests. The SLSA states that DBI is the "asset management agent" for the loans and Stelis is the "investor." DBI and Stelis are also collectively referred to as the "Client." The SLSA includes a governing law provision indicating that the parties "agree to submit to the jurisdiction of California courts" in Orange County.

In February 2015, Ophrys LLC (Ophrys), in its capacity as manager of Stelis, notified Land Home that Stelis was terminating DBI as the asset manager for the loans and instructed Land Home to continue servicing the loan portfolio pursuant to the SLSA. In response, DBI told Land Home that Stelis had no authority to terminate DBI as asset management agent and instructed Land Home to take direction from DBI regarding loans owned by Stelis. Faced with this conflict, Land Home retained outside counsel and elected to follow Stelis's instructions.

The dispute spawned numerous lawsuits between various parties in multiple venues, two of which are of particular relevance here. In March 2015,

Stelis sued DBI in King County Superior Court asserting that DBI breached obligations as mortgage servicer for loan portfolios held by Stelis (the "Stelis v. DBI lawsuit").[1]  In December 2015, Land Home filed a complaint against DBI and Stelis in Orange County, California seeking declaratory relief as to which entity Land Home should take directions from (the "first Land Home lawsuit").

In May 2016, DBI and Stelis entered into a settlement agreement (the 2016 SA) to resolve nine pending lawsuits in New York, California, and Washington, including the Stelis v. DBI lawsuit and the first Land Home lawsuit.[2]  In the 2016 SA, the parties agreed to "submit to the jurisdiction of the Superior Court of Washington for King County and the Hon. Bruce W. Hilyer as referee" for "resolution of all disputes arising out of this Settlement Agreement."  The 2016 SA includes a dispute resolution clause providing that "any dispute or controversy relating to this Settlement Agreement, including the implementation, interpretation, application, or enforcement of this Settlement Agreement, shall be resolved in accordance with the procedures set forth in RCW 4.48 (Trial Before Referee)."  In accordance with the 2016 SA, the trial court entered an agreed injunction in the Stelis v. DBI lawsuit and appointed Judge Hilyer as referee.

In January 2017, following the execution of the SLSA, Land Home voluntarily dismissed the first Land Home lawsuit without prejudice.  In March 2018, DBI filed a lawsuit against Land Home in Orange County, California alleging Land Home breached the SLSA by following the directions of Stelis and not DBI

---

[1] *Stelis v. DBI*, King County Superior Court Cause No. 15-2-06898-9 SEA.
[2] The 2016 SA defines the "DBI Parties" as Dreambuilder Invs., LLC, DBI Coinvestor Fund VIII, LLC, Gregory Palmer, and Peter Andrews, and it defines the "Ophyrs Parties" as Stelis, LLC, Cerastes, LLC, Ophrys, LLC, Oak Harbor Capital X, LLC, and William S. Weinstein.

(the second Land Home lawsuit).[3]  In May 2018, Land Home and DBI stipulated to the authority of a California referee.  In March 2019, Land Home filed a cross complaint which set forth claims against DBI that the referee later found were "substantially the same" as the claims raised in the first Land Home case referenced in the 2016 SA.

In November 2020, Land Home sued Stelis in King County Superior Court for indemnification for fees and costs incurred in defending itself against DBI (the Land Home indemnity lawsuit).[4]  Land Home alleged that if DBI should recover against it in the second Land Home lawsuit, Stelis should indemnify Land Home because Land Home followed Stelis's instructions in providing services.  Stelis then asked the referee for a determination that the 2016 SA entitled Stelis to indemnification from DBI related to Land Home's claims against Stelis in the Land Home indemnity lawsuit.  In December 2020, the referee determined that DBI was required to indemnify Stelis pursuant to the 2016 SA and entered an order granting Stelis's motion accordingly.  To implement that order, Stelis filed a motion for attorney fees and costs related to the Land Home indemnity lawsuit.

In March 2021, Stelis and Land Home moved to consolidate the Land Home indemnity lawsuit with the Stelis v. DBI lawsuit for resolution by the referee pursuant to the 2016 SA.  DBI opposed consolidation.  The trial court entered an order denying consolidation but linking the cases.

---

[3] *Dreambuilder Invs., LLC v. Land Home Fin. Servs., Inc.,* Superior Court of the State of California, County of Orange, Case No. 30-2018-00980982-CU-BC-CJC.

[4] *Land Home Fin. Servs., Inc. v. Stelis*, LLC, King County Superior Court Case # 20-2-17243-0 SEA.

In February 2022, Land Home and Stelis entered into a settlement agreement (the 2022 SA) to resolve the Land Home indemnity lawsuit and the second Land Home lawsuit. DBI declined to participate in the settlement negotiations. Among other provisions, the 2022 SA provides for entry of judgment in favor of Land Home and against DBI and Stelis with respect to unpaid servicing invoices and attorney fees incurred by Land Home in an amount to be determined by the referee. Stelis sought the referee's approval for the proposed settlement agreement. DBI then joined the Land Home indemnity lawsuit as a defendant-intervenor and moved for dismissal under CR 12(b)(3), which governs dismissal for improper venue, arguing that Land Home's indemnification claims against Stelis must be brought in California pursuant to the SLSA and that the 2016 SA was irrelevant because Land Home was not a named party therein.

On May 25, 2022, following a hearing, the referee approved the 2022 SA in a memorandum opinion. Over DBI's objection, the referee concluded that the 2016 SA encompassed the Land Home indemnity lawsuit and authorized him to approve the 2022 SA, which he determined to be reasonable. Accordingly, the referee ordered DBI to sign the 2022 SA and authorized Stelis to sign on DBI's behalf if it did not. DBI objected to the referee's decision, arguing that the referee lacked authority and jurisdiction to enter it, the form of the proposed report violated RCW 4.48.110, and the settlement was unreasonable.

Stelis executed the 2022 SA on DBI's behalf, and in June 2022 Land Home provided notice of settlement without dismissal to the trial court that was presiding over the *Stelis v. DBI* lawsuit and the Land Home indemnity lawsuit. DBI moved

to strike the notice of settlement and prevent Land Home from filing any similar document until the requirements of RCW 4.48 were met. In July 2022, the trial court denied DBI's motion to dismiss the Land Home indemnity lawsuit under CR 12(b)(3). In August 2022, over DBI's opposition, the trial court granted Land Home's motion to stay the matter pending further proceedings before the referee.

On September 2, 2022, the referee issued a decision regarding Stelis's motion for an award of attorney fees and costs and DBI's motion objecting to the form of the referee's report. The referee rejected DBI's objections to the form and content of the rulings on the settlement of the Land Home indemnity lawsuit based on RCW 4.48 and determined the amount of attorney fees to be awarded to Land Home as a "reasonable compromise" as required by the 2022 SA. DBI submitted multiple letters to the referee objecting to the decision.

Meanwhile, trial before the California referee in the second Land Home lawsuit was scheduled to commence in August 2022. After DBI failed to appear, the California referee entered judgment in favor of Land Home and dismissed DBI's affirmative claims without prejudice. In so ruling, the California referee noted that because the 2022 SA "would resolve this Action," Land Home "stated its willingness to limit its recovery under the Judgment in this Action to the amounts awarded under the 2022 Settlement Agreement as approved by Referee Hilyer."

In May 2023, Land Home moved the trial court presiding over the Land Home indemnity lawsuit to lift the stay of proceedings, affirm the referee's decisions, and enter judgment. DBI opposed the motion and argued that judgment can only be entered after issuance of a referee's "final report" pursuant to RCW

4.48.110, which had not yet occurred.  The trial court then wrote a letter to the referee asking whether he believed the matter was sufficiently adjudicated to be considered final for purposes of CR 54(b)[5] and, if so, to provide findings of fact and conclusions of law as "such findings are necessary to enter judgment" "[i]n the absence of a final report under RCW 4.48.110."

On October 2, 2023, following a hearing, the referee issued findings of fact and conclusions of law and determined that the requirements of CR 54(b) had been met for entry of final judgment as to the settlement of the Land Home indemnity lawsuit.  On December 8, 2023, following a hearing, the trial court entered an order affirming and adopting the referee's decision and order and entering judgment against DBI.  Therein, the trial court determined that "[t]his matter has been fully litigated and numerous decisions have been entered by . . . Referee Hilyer, [the California referee], and this Court, all of whom have considered issues herein."  The trial court denied DBI's motion for reconsideration.

DBI now appeals.

II

DBI argues the trial court erred in entering judgment affirming and adopting the referee's decision and order in the Land Home indemnity case.  We disagree.

A

As a preliminary matter, we conclude the referee properly exercised his authority pursuant to the 2016 SA to resolve the underlying liability between Land Home, Stelis, and DBI by approving the 2022 SA.  "Settlement agreements are

---

[5] As discussed in detail in section II.B below, CR 54(b) governs "Judgment Upon Multiple Claims or Involving Multiple Parties."

contracts." *Starr Indem. & Liab. Co. v. PC Collections, LLC*, 25 Wn. App. 2d 382, 400, 523 P.3d 805 (2023) (quoting *Hamblin v. Castillo Garcia*, 9 Wn. App. 2d 78, 91, 441 P.3d 1283 (2019). "When interpreting a contract, we view the contract as a whole, interpreting particular language in the context of other contract provisions." *Id.* "Absent disputed material facts, the construction or legal effect of a contract is reviewed de novo." *Matter of Estate of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020).

The 2016 SA specified that the parties desired to settle "the disputes that are the subject of the Pending Lawsuits *and all related disputes*." (Emphasis added.) Pursuant to the agreement, DBI released "all claims, rights, demands, and causes of action, known or unknown, matured or unmatured, existing, claimed to exist, or which may hereafter arise out of any agreement, act or omission existing or occurring prior to the date of this Settlement Agreement" against Stelis, "including, without limitation, all claims that were or could have been asserted in the Pending Lawsuits and all contractual rights based on any agreement existing prior to the date of this Settlement Agreement." DBI also agreed to "indemnify and hold harmless" Stelis from "all claims and causes of action asserted at any time, past, present, or future . . . relating to any claims by vendors or other persons who have provided goods or services to Stelis." It is undisputed that Land Home was a "vendor" that provided "services" to Stelis pursuant to the SLSA.

DBI argues the referee had no authority over the Land Home indemnity case because his authority is limited to the pending lawsuits named in the 2016 SA. Interpreting the 2016 SA as a whole, we agree with the referee that "the

parties intended a comprehensive resolution of their disputes including then present and potential future litigation" and that DBI's "indemnification obligations are comprehensive and are not limited to any circumscribed list of particular lawsuits." The first and second Land Home lawsuits and the Land Home indemnity lawsuit all pertain to the same subject matter addressed by the 2016 SA and thus are encompassed within the "related disputes" to the subject matter of the pending lawsuits that the parties to the 2016 SA "intend[ed] to fully resolve." We also agree that the second Land Home lawsuit and the Land Home indemnity lawsuit are among the "dispute[s] regarding the settlement of legal proceedings" assigned to the referee pursuant to the 2016 SA. And although the 2016 SA was executed before DBI filed the second Land Home lawsuit and Stelis is not a party to that lawsuit, the 2016 SA also requires DBI to indemnify Stelis from future claims arising from their dispute. As the referee noted, "DBI has only itself to blame for filing the second Land Home lawsuit which has become the vehicle for Land Home to reassert liability against Stelis through the indemnification lawsuit."

B

Having determined the referee was authorized to resolve the Land Home indemnification lawsuit, we disagree with DBI's contention that the trial court abused its discretion by entering judgment under CR 54(b).

CR 54(b) permits the trial court to "direct the entry of a final judgment" regarding one or more claims or parties "upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment." This rule "makes an

immediate appeal available in situations in which it could be unjust to delay entering a judgment on a distinctly separate claim until the entire case has been finally adjudicated." *Gull Indus., Inc. v. State Farm Fire and Cas. Co.*, 181 Wn. App. 463, 480, 326 P.3d 782 (2014). A trial court's decision to enter judgment under CR 54(b) is reviewed for abuse of discretion. *Id.* at 481. A court abuses its discretion when its decision is "manifestly unreasonable, or the discretion [is] exercised on untenable grounds or for untenable reasons." *Nelbro Packing Co. v. Baypack Fisheries, LLC*, 101 Wn. App. 517, 525, 6 P.3d 22 (2000).

In determining whether there is no just reason for delaying the entry of a final judgment, a trial court should consider the following five factors:

> (1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal.

*Lindsay Credit Corp. v. Skarperud*, 33 Wn. App. 766, 772, 657 P.2d 804 (1983).

Here, in concluding that entry of final judgment on the 2022 SA was proper, the referee specified that he had exercised his authority under the 2016 SA and his appointment as referee under RCW 4.48 "to settle and resolve the underlying liability upon which the indemnity action is asserted" and that the 2022 SA "is a full adjudication of all claims asserted in that litigation." The referee specified that "there is absolutely no relationship whatsoever between the Land Home litigation and the other litigation which is also within my authority to settle" pursuant to the

2016 SA. Thus, factors 1 through 4 weigh in favor of finding no just reason to delay entry of judgment. As for factor 5, disallowing an immediate appeal would force Land Home to delay finality pending resolution of unrelated issues in other lawsuits. On this record, the referee correctly concluded the requirements for entry of judgment were met under CR 54(b), and the trial court did not abuse its discretion in entering judgment accordingly.[6]

C

DBI also argues the referee's decision and order violated the statutory procedure mandated by RCW 4.48, which in turn violated its due process rights. Contrary to DBI's argument, the referee properly interpreted and applied RCW 4.48.

The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Birgen v. Dep't of Lab. & Indus.*, 186 Wn. App. 851, 857, 347 P.3d 503 (2015). "'[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" *Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wn.2d 205, 221, 504 P.3d 796 (2022) (quoting *Dept. of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). "But if the statute remains susceptible to more than one reasonable meaning after this inquiry, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Belleau Woods II, LLC v. City of Bellingham*, 150 Wn. App. 228, 240-41, 208 P.3d 5 (2009).

---

[6] DBI also argues the CR 54(b) requirements were not met because the claims at issue were never adjudicated and so there has been no unjust delay. This argument rests upon DBI's claim that the trial court improperly relied on the referee's decisions and orders in the absence of a "final report" pursuant to RCW 4.48.110. As discussed in the text above, we reject this argument.

RCW Chapter 4.48, which governs trial by referee, was reenacted in its current form as part of the Court Improvement Act of 1984. LAWS OF 1984, ch. 258, § 512. Pursuant to the act, "[s]tatutes governing the use of referees in civil actions are amended to enhance their usefulness as an alternative to in-court trial of civil actions." 1984 Final Legislative Report, 48 Wash. Leg. at 196. "A trial before a referee maintains the formality of the trial court subject to the order of reference." *Barnett v. Hicks*, 119 Wn.2d 151, 156, 829 P.2d 1087 (1992). Under RCW 4.48.060(1), "Subject to the limitations and directions prescribed in the order of reference, the trial conducted by a referee shall be conducted in the same manner as a trial by the court," with the referee "apply[ing] the rules of pleading, practice, procedure, and evidence used in the superior courts of this state." "Unless otherwise agreed . . . the referee has similar powers to a trial court judge." *Barnett*, 119 Wn.2d at 156.

Following trial, the referee is directed to prepare a report containing findings of fact and conclusions of law. RCW 4.48.070. RCW 4.48.110 provides as follows:

(1) Within twenty days after the conclusion of a trial before a referee appointed under RCW 4.48.010 . . . the referee shall mail to each party a copy of the referee's proposed written report. The proposed report shall contain the findings of fact and conclusions of law by the referee and the judgment of the referee.

(2) Within ten days after receipt of the copy of the proposed report, any party may serve written objections and suggested modifications or corrections to the proposed report on the referee and the other parties. The referee shall without delay consider the objections and suggestions and prepare a final written report. If requested by any party, the referee shall conduct a hearing on the proposed report and any suggested corrections or modifications before preparing the final written report.

Upon receipt of a final written report, "[t]he court may affirm or set aside the report . . . either in whole or in part." RCW 4.48.090. Lastly, "The decision of a referee entered as provided in this section may be reviewed in the same manner as if the decision was made by the court." RCW 4.48.120(2). "Consequently, appellate review of a referee's report is the same as from a final judgment from a trial court, i.e., full appellate review." *Barnett*, 119 Wn.2d at 157.

DBI asserts that RCW 4.48 must be read to require the referee to submit his rulings on the settlement of the Land Home Litigation as a proposed "final report." Under these circumstances, we agree with the referee that DBI's demand to immediately issue a "final report" pursuant to RCW 4.48.110 "is not what the statute contemplates." The plain language of RCW 4.48.110 describes a process occurring at the "conclusion of a trial." But here, the referee was tasked with rendering decisions and findings in litigation covering multiple distinct parties and pending in multiple jurisdictions. As the referee pointed out, this situation presents an "unusual posture" because it involved "ongoing supervision of a 2016 Settlement Agreement which involved resolution of other cases in litigation throughout the country," some of which are still pending. The referee explained that the "only reason" he had not yet issued a "final report" pursuant to RCW 4.48.110 "is because of other entirely separate and distinct litigation involving the DBI parties, the Stelis parties and different third parties than Land Home," not because of the Land Home litigation "which has been fully resolved."

For the same reason, the referee saw "no inconsistency in concluding that the requirements of CR 54(b) for entry of judgment on the settlement agreement

for the Land Home litigation are met although a referee's 'Final Report' under RCW 4.48.110 et seq. has yet to be issued in this case." In so doing, the referee effectuated the legislature's intent to "enhance the[] usefulness" of these proceedings. 1984 Final Legislative Report, 48 Wash. Leg. at 196.[7] DBI's reading of the statute would render the referee powerless to apply CR 54(b) to "direct the entry of a final judgment" regarding one or more claims or parties even when there is no just reason for delay. As the referee stated, "a more inefficient approach to the administration of justice in this case would be hard to imagine." We avoid construing a statute in a manner that results in "unlikely, absurd, or strained consequences." *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003).

DBI argues the referee's refusal to issue a "final report" violated its due process rights. DBI asserts that the trial court's affirmation and adoption of the referee's decisions and findings in support of its entry of judgment bypassed the judicial review process at the superior and appellate court levels because those decisions and findings were never subject to objections or judicial review as required by RCW 4.48.110 and .120. But the record shows that DBI received ample procedural due process throughout the proceedings. As previously discussed, DBI submitted briefing and oral argument on each motion submitted to and decided by the referee and entered written objections to his decisions. DBI also intervened in the Land Home indemnification lawsuit, moved to have the

---

[7] *See Covell v. City of Seattle*, 127 Wn.2d 874, 887, 905 P.2d 324 (1995) ("This court has sanctioned recourse to final legislative reports as an aid in determining legislative intent."); *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 185, 829 P.2d 1061 (1992) (referring to a quotation from the Final Legislative Report as "the express legislative intent" of the act).

lawsuit dismissed, and sought interlocutory review of that decision. DBI insists there has been no independent judicial review of the referee's reports, but the trial independently reviewed the materials in the matter before adopting the referee's decisions as its own and entering judgment against DBI. DBI then filed a motion for reconsideration and reply, which the trial court considered and ruled on. And DBI filed a timely notice of appeal, resulting in this court's appellate review. DBI received the full benefit of procedural due process contemplated in RCW 4.48.

D

DBI's remaining arguments likewise fail. First, DBI argues the trial court's decision to adopt the referee's decisions and findings and enter judgment under CR 54(b) contravened the order denying consolidation of the Land Home indemnity lawsuit and the *Stelis v. DBI* lawsuit. DBI contends that consolidation was denied on the ground that it could compromise the referee. But the order denying consolidation does not state a basis for its ruling, so DBI's reasoning is speculative. Moreover, DBI did not oppose both cases being assigned to the same judge so as to "mitigate any risk of inconsistent outcomes." Although the court ultimately denied consolidation, it linked the cases and assigned them to the same trial court judge. In any event, the trial court exercised its independent authority to render the decision now on appeal.

Second, DBI argues the trial court's entry of judgment improperly grants Land Home non-party benefits in contravention of section 19 of the 2016 SA, which provides that "[t]he Settlement Agreement shall not create any rights or benefits in any third-party. No third-party may rely upon, claim benefits or rights under or

enforce this Settlement Agreement." But section 19 further provides, "[t]his provision shall not limit the scope of the releases or the indemnification provisions contained in the Settlement Agreement." As previously discussed, the 2016 SA obligated DBI to indemnify Stelis from "all claims and causes of action asserted at any time, past, present, or future . . . relating to any claims by vendors or other persons who have provided goods and services to Stelis." The trial court's entry of judgment does not contravene this agreement.

III

As DBI has failed to establish an entitlement to relief, we affirm.

_Feldman, J._

WE CONCUR:

_Coburn, J._